[No. B217036. Second Dist., Div. Eight. Feb. 7, 2011.]

EHP GLENDALE, LLC, et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES, Defendant and Appellant.

COUNSEL

Cahill Davis & O'Neall, Cris K. O'Neall, C. Stephen Davis, John D. Cahill, Kenneth A. Franklin and Andrew W. Bodeau for Plaintiffs and Appellants.

Reed Smith, Marty Dakessian, Wendy S. Albers and John R. Messenger for the California Taxpayers' Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Andrea Sheridan Ordin, County Counsel, and Albert Ramseyer, Deputy County Counsel, for Defendant and Appellant.

Jennifer B. Henning for the California State Association of Counties as Amicus Curiae on behalf of Defendant and Appellant.

OPINION

**FLIER, J.**—The County of Los Angeles (County) appeals from the grant of summary judgment to EHP Glendale, LLC, and Eagle Hospitality Properties Trust, Inc. (Eagle), on Eagle's action for a property tax refund. The County contends the trial court erred in ruling as a matter of law that the Los Angeles County Assessor (assessor) and the Los Angeles County Assessment Appeals Board (Board) used the wrong methodology in appraising the Glendale Hilton Hotel (hotel or property) after its purchase by Eagle. In turn, Eagle cross-appeals from the trial court order denying its motion for attorney fees.

We hold that the trial court erred in granting a summary judgment on an incomplete record, and, in any case, the record establishes there are triable issues of material fact. For the reasons explained below, the judgment must be reversed and the case remanded for trial.

## FACTS[1]

### 1. The Subject Property

The property at issue is located near the intersection of Brand Boulevard and Glenoaks Boulevard in the City of Glendale (City). The 18-story structure, built in 1991, is operated as a full-service first-class hotel with 351 guestrooms, including 13 suites. The hotel encompasses about 285,000 square feet of improvements, including a lobby, administrative offices, hotel laundry,

---

[1] The facts are taken from the record before the trial court.

two ballrooms, a "prefunction" area, seven meeting rooms, a business center, a fitness facility, a gift shop, an outdoor pool and spa with sundeck, two restaurants, a lounge, kitchen facilities and an approximately 196,000-square-foot, five-level, below-grade parking garage accommodating over 500 vehicles.

## 2. Hotel Sale and Purchase

In January 2005, the Hilton Hotels Corporation (Hilton) offered the hotel for sale. Hilton marketed the property as being located in a prime location, distant from competing Hilton hotels, relatively insulated from new supply, in good physical condition and the only "four diamond" facility in the San Fernando and San Gabriel Valleys.

In May 2005, Eagle and Hilton entered into a sale and purchase agreement for Eagle to acquire the hotel. As part of the transaction, Hilton and Eagle entered into a franchise agreement for Eagle to use the Hilton franchise in exchange for payment of a royalty and a management contract under which Hilton agreed to continue managing the hotel for two years.

The hotel purchase closed in June 2005. The purchase price was $79.8 million and included the real property, personal property (e.g., furniture, fixtures and equipment) and certain intangible assets and rights.[2] Under the stipulated facts, the franchise agreement with Hilton and the management contract were among the intangible assets acquired by Eagle during the sale.

## 3. Postsale Price Refund

Eagle took title to the hotel subject to a covenant running with the land allowing the Glendale Redevelopment Agency (redevelopment agency) to participate in a percentage of the hotel's gross revenue. Because Hilton was unable to reach a satisfactory agreement with the City to eliminate the redevelopment agency's profit participation, Hilton paid Eagle a postclosing refund of $2.5 million under the terms of the purchase agreement. The $79.8 million purchase price was effectively reduced to $77.3 million.

## 4. Property Reassessment

After Eagle purchased the property, the assessor reassessed the property as required by Proposition 13. The assessor initially enrolled a total value for the hotel of $79.8 million, allocating $7.8 million to the land, about $68.5 million to improvements and about $3.4 million to personal property.

---

[2] For discussion purposes all dollar sums are rounded.

## 5. *Appeal to Board*

Eagle appealed the enrolled assessment to the Board, contending the market value of the property should be decreased to $51 million. Eagle argued that the assessor's methodology for appraising the hotel was invalid and that the assessment impermissibly captured the value of nontaxable intangible assets. The Board held a valuation hearing over the course of six days.

### A. *Eagle's Valuation*

Eagle argued at the hearing before the Board that the franchise agreement, the management agreement and the assembled hotel workforce had independent value at the time of sale and that the assessor was legally required to deduct those values from the purchase price in the assessment. Eagle further argued that the hotel's various service centers, such as food and beverage, room telephone and telecommunications services, business center, vending machines, health club, guest laundry and parking facilities, were independent businesses whose value also should have been deducted from the hotel's purchase price.

Eagle's expert appraiser testified he valued the property using all three recognized approaches to value, i.e., sales comparison, income capitalization and cost.[3] Based on all three approaches, his final opinion of the value of the going concern hotel business (including land, improvements, personal property and intangible assets and rights) was $77.3 million.

As a final step, however, Eagle's appraiser incorporated a value allocation made by another of Eagle's experts who appraised the fair market value of (1) the Hilton flag and franchise, (2) the assembled and trained workforce, and (3) the hotel's various service centers. That analysis resulted in ascribed values of $7.1 million for the franchise, $265,000 for the assembled workforce and $7.3 million for the hotel's various service centers, or a claimed total value for intangible assets and rights of $14.6 million.

From his final opinion of property value of $77.3 million, Eagle's valuation expert deducted the ascribed value of intangible assets and rights, to account for the "going concern" value of the hotel business. He concluded that the value of the taxable property (including land, improvements and

---

[3] Assessors have developed three basic methods for determining the full cash value of property, namely, the market data method, the income method and the cost method. (See *Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354] (*Bret Harte*).)

personal property and *excluding* intangible assets and rights) was $62.6 million.

### B. *Assessor's Valuation*

During the valuation hearing, the assessor's deputy, whose analysis the assessor adopted, testified he employed the income capitalization approach. Under this method, he analyzed the historical operating revenue and expenses of the hotel and used the data to develop a stabilized income and expense projection for the property as of the June 2005 date of the hotel's change in ownership.

After projecting the hotel's income revenue from all sources, the assessor's deputy deducted appropriate projected expenses to arrive at a net operating income for the hotel. These deductions from the income stream included Hilton's management and franchise fees, labor costs and marketing expenses.

Using a direct capitalization technique, also called the "Rushmore method,"[4] the deputy assessor divided the stabilized net income by a capitalization rate derived from sales of comparable hotels to arrive at the estimated value of the property as of the date of purchase. This calculation yielded an estimated value for the hotel of $76.3 million. Because the value of the real property he obtained from the income capitalization approach was close to the hotel's verified sale price, the deputy assessor accepted the verified sales price as the value of the real estate. He then deducted the nontaxable value of the furniture, fixtures and equipment (an undisputed $3.4 million) to arrive at a taxable value of $73.3 million.

The assessor recommended to the Board that the assessment be adjusted downward by $2.5 million to reflect the seller's refund of part of the sale price for the redevelopment agency's reserved participation interest.

### C. *Board Decision*

The Board adopted the assessor's property valuation. Through an apparent oversight, however, the Board neglected to adjust the enrolled assessment by

---

[4] The deputy assessor testified there was an alternative method of assessment, the "business enterprise value" method, which was followed by Eagle's experts and espoused by the statewide Assessors' Handbook Section 502. The Assessors' Handbook recommended that intangible rights and assets be separately identified, valued and then deducted from the entire business enterprise as a going concern to arrive at taxable value of the property. (Board of Equalization, Assessors' Handbook Section 502, Advanced Appraisal (Dec. 1998) pp. 156, 158.)

deducting the value of the redevelopment agency's $2.5 million retained profit sharing interest as recommended by the assessor.[5]

## PROCEDURAL HISTORY

### 1. Action for Property Tax Refund

Eagle challenged the Board's determination by bringing the present action seeking a refund of about $187,000 in property taxes.

The County moved for bifurcation of the trial into two phases and sought an order directing Eagle to produce transaction documents including documents reflecting the financing, appraisals, financial projections and bidding process for the hotel's purchase.

The trial court denied the County's motion for bifurcation but granted the County's request for further discovery from Eagle.

### 2. Summary Judgment

Meanwhile, Eagle brought a motion for summary judgment.[6] Eagle stated the sole issue in its action concerned "whether the Board properly equalized the value of [Eagle's] property, based on the evidence presented to the Board." Eagle contended the assessor's valuation, adopted by the Board, relied on an invalid appraisal methodology that did not fully identify, value and exclude intangible assets from the assessed property as required by California law. In support of its motion for summary judgment, Eagle presented to the court only fragmentary excerpts of the administrative record.[7]

The trial court granted the motion for summary judgment, ruling the Board erred as a matter of law in adopting the assessor's methodology because it failed to fully exclude intangible assets from the property assessment.

[5] The County concedes, and there is no dispute, that the hotel's assessment should be adjusted downwards by $2.5 million for this profit participation interest.

[6] Upon Eagle's motion, the trial court issued a protective order regarding confidentiality of many of the documents Eagle relied on in moving for summary judgment, and many of the valuation documents ultimately were filed under seal for summary judgment purposes.

[7] The trial court granted Eagle's request to seal much of the material it relied on in support of the motion. The County assigns the court's order to seal records as another error committed by the court. We do not address whether the court's action was proper or unduly broad under the circumstances.

At the summary judgment hearing, the trial court orally declared its understanding that its role was "to examine the underlying record for substantial evidence and ascertain whether the Board applied a valid appraisal technique correctly." The court indicated that the assessor had prepared a valuation that included the valuation of intangible assets "and that is clearly impermissible under California law . . . ."

The trial court later issued a written ruling granting the summary judgment. The court framed the principal issue to be resolved as "whether or not the Board properly identified, valued, and excluded from the property tax assessment the value of intangibles." As in the court's oral comments, the written order stated that the applicable standard of review was for the court to "examine the underlying record for *substantial evidence* and to ascertain whether the Board *applied a valid appraisal technique correctly*." (Italics added.) The court concluded the assessor's "methodology failed to provide for a return *on* the non-taxable operating assets in the total amount deducted from the hotel's income stream." (Italics added.)

### 3. *Motion for Clarification of Proposed Judgment and Judgment*

The County objected to a proposed judgment incorporating the ruling and filed a motion for clarification.

The County asserted that if, as the trial court had indicated, the court was proceeding under a substantial evidence standard of review, it would be error for the court to grant summary judgment because the entire record of the administrative proceedings must be considered in such a review and the entire administrative record was not before the court. On the other hand, the County argued, if the court intended to rule that the method the assessor applied was invalid as a matter of law, the court had not provided a clear explanation and basis for its ruling to allow the assessor and Board upon remand to understand their error, have a reasonable opportunity to conform their actions with the law and avoid future error.

Eagle asserted the trial court had applied the proper standard of review because it had "unquestionably" determined the appraisal method employed by the assessor and the Board violated California law. In any case, Eagle argued, "[u]nder either the substantial evidence standard of review or the de novo standard of review the result is the same," namely, "[t]he Board erred by failing to properly account for non-taxable intangible assets."

In its reply to Eagle's opposition, the County pointed out that basic appraisal theory provides that the return *on* an asset's value is reflected in the *capitalization rate* that is applied to the asset's net income. The County cited,

among other things, one authority that states: "Direct capitalization [the methodology used by the assessor and adopted by the Board in this matter] uses income rates *such as overall capitalization rates*, which must *implicitly allow* for *both* the return *on* and return *of* capital. *When the capitalization rate is applied to the subject property's income*, the indicated value must represent a price that would allow the investor to earn a market rate of return *on* the capital invested along with the recapture *of* the capital." (Appraisal Inst., The Appraisal of Real Estate (12th ed. 2001) p. 488, italics added.)

The court denied the County's motion for clarification, effectively overruling the County's objections to the proposed judgment.

The trial court then entered judgment in Eagle's favor declaring that the assessor's "valuation methodology, which was adopted by the [Board], necessarily failed to exclude the value of intangible assets from the assessment of [Eagle's] property, the [hotel], and is contrary to California law."[8] The judgment remanded Eagle's assessment appeals application to the Board for further proceedings consistent with the court's ruling on summary judgment.[9]

Eagle filed a motion for attorney fees seeking an award of approximately $500,000. The court denied the motion.

The County appealed from the judgment, and Eagle cross-appealed from the denial of the motion for attorney fees.[10]

## STANDARD OF REVIEW

Under Code of Civil Procedure section 437c, subdivision (c), summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of summary judgment is not to resolve issues of fact, but rather to determine whether there *are* issues of fact that must be resolved through a trial. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122; 762 P.2d 46], superseded by statute on

---

[8] The trial court also further found the Board erred in the assessment of Eagle's property by failing to exclude the $2.5 million postclosing refund from the assessed value.

[9] The County subsequently moved for a new trial. However, the motion for new trial apparently was served and filed one day too late, and the County took the motion off calendar.

[10] After the completion of briefing, we requested that the parties provide supplemental briefing with respect to additional issues, namely, whether the trial court acted in excess of jurisdiction in entering the judgment it entered, whether there are any triable issues of material fact and whether the court had a sufficient record to fully determine the existence of such triable issues of fact. The parties submitted additional briefing, and we have taken their supplemental briefs into consideration in rendering our opinion.

other grounds as stated in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The function of the trial court is solely to determine whether such issues of material fact exist and not to decide the merits of the issues themselves. (*Molko*, at p. 1107.)

The determination of the trial court in ruling on a motion for summary judgment is one of law based upon the papers submitted. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1013 [48 Cal.Rptr.2d 174].) Upon review, we apply the same standard applicable in the trial court, i.e., we independently review the record to determine whether there are triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) In so doing, we view the parties' evidentiary submissions in the light most favorable to the appellant as the losing party. (*Id.* at p. 768.)

When a taxpayer challenges a decision of the board of equalization claiming the board "erroneously applied a valid method of determining full cash value, the decision of the board is equivalent to the determination of a trial court, and the trial court in turn may review only the record presented to the board. [Citations.] The trial court may overturn the board's decision only when no substantial evidence supports it, in which case the actions of the board are deemed so arbitrary as to constitute a deprivation of property without due process. [Citations.] On the other hand, when the taxpayer challenges the validity of the valuation method itself, the trial judge is faced with a question of law. [Citations.] That question . . . is whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law." (*Bret Harte, supra*, 16 Cal.3d at p. 23.) In conducting a substantial evidence review, the court must examine the *entire* record to determine if the assessment board's findings are supported by substantial evidence. (*American Sheds, Inc. v. County of Los Angeles* (1998) 66 Cal.App.4th 384, 396 [78 Cal.Rptr.2d 58] (*American Sheds*); *Dennis v. County of Santa Clara* (1989) 215 Cal.App.3d 1019, 1026 [263 Cal.Rptr. 887] (*Dennis*).)

## DISCUSSION

1. *The Trial Court Erred in Granting Summary Judgment upon an Incomplete Record*

Eagle contended in the trial court that the assessor and Board failed to appropriately consider and remove the value of the hotel's franchise license agreement, the workforce in place and other claimed intangibles in determining the cash value of the hotel upon transfer. Eagle contends this presented a claim that the assessor and Board employed an "invalid appraisal methodology" and an issue of law. We conclude the issue presented to the trial court

amounted to one of fact, and the trial court erred in granting summary judgment based on a fragmentary record.

■ The assessor in this case applied an income approach to value the hotel. The income approach is a valid methodology for determining full cash value. (Cal. Code Regs., tit. 18, § 3, subd. (e); *Bret Harte, supra*, 16 Cal.3d at p. 24.) Eagle's contention that the assessor improperly applied the income approach by not deducting intangibles presents a question of fact. (See *County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1121–1122 [5 Cal.Rptr.3d 575] [value of real property is question of fact, and selection and application of appropriate appraisal method also are factual questions, provided method is legally valid and not arbitrary]; *Trailer Train Co. v. State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 581–584 [225 Cal.Rptr. 717] [contention board should have reduced assessed value for depreciation presents question of fact; board's selection of particular method of valuation from among valid methods, including choice of combining methods, rests in board's discretion]; *Hunt-Wesson Foods, Inc. v. County of Alameda* (1974) 41 Cal.App.3d 163, 179–180 [116 Cal.Rptr. 160] [claim that board failed to deduct depreciation amount does not raise challenge to method, but merely suggests an alternative method of valuation].)

As noted, the issue whether the Board's findings are supported by substantial evidence presupposes that the trial court has before it *all* the evidence considered by the Board in making its assessment. (*American Sheds, supra*, 66 Cal.App.4th at p. 396; *Dennis, supra*, 215 Cal.App.3d at p. 1026.) "Substantial evidence" is deemed to confer finality upon an administrative decision on the facts when, upon an examination of the *entire* record, the evidence and inferences drawn from the evidence are such that a reasonable fact finder " ' "*might* have reached the decision." ' " (*Dennis*, at p. 1026.)

Although a complete record of the proceedings before the Board was available to Eagle and purportedly was already prepared, Eagle failed to provide the full record to the trial court in moving for summary judgment. " 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' " (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134] (*Mann*).) Despite the availability of the entire administrative record, Eagle proffered only selected portions of the record that purported to favor Eagle's position. In opposition, the County provided hastily assembled exhibits from materials recently obtained from Eagle through discovery.

Neither party's offerings nor the collective exhibits provided the trial court with a full administrative record. The court purported to review the exhibits

to ascertain whether the Board's assessment of the taxable value of the hotel was supported by substantial evidence. Yet the court could not properly do so absent a whole record review. (*Mann, supra*, 38 Cal.3d at p. 35.) The purpose of the summary judgment statute is not to provide a substitute for existing methods in the trial of issues of fact. (*Walsh v. Walsh* (1941) 18 Cal.2d 439, 444 [116 P.2d 62]; see also *Richter v. United Calif. Theatres, Inc.* (1960) 177 Cal.App.2d 126, 132 [1 Cal.Rptr. 895].)

██  Here, the court allowed Eagle to use the summary judgment procedure in place of trial. In its motion for clarification, the County objected to the trial court's granting the motion for summary judgment upon only a partial record of the proceedings before the Board. However, the trial court disregarded the objection and ventured to resolve issues of fact that could have, and should have, been reserved for trial. The trial court even acknowledged it lacked a proper record, noting that "[a]t this juncture, the record has not been sufficiently developed to decide whether [the assessor's] methodology can be properly applied in the case of this property." When a party seeking summary relief fails to provide an adequate record, the party's request for relief must be denied because the absence of a complete record of proceedings prevents a substantial evidence review.

Eagle asserts that the trial court did not exceed its jurisdiction in entering the judgment, arguing that the issues presented to the court were based on uncontested or undisputed facts and thus presented solely issues of law, as to which review is de novo. Relying on cases such as *GTE Sprint Communications Corp. v. County of Alameda* (1994) 26 Cal.App.4th 992, 999 [32 Cal.Rptr.2d 882], *Mola Development Corp. v. Orange County Assessment Appeals Bd.* (2000) 80 Cal.App.4th 309, 316, 328 [95 Cal.Rptr.2d 546], *County of Stanislaus v. Assessment Appeals Bd.* (1989) 213 Cal.App.3d 1445, 1450 [262 Cal.Rptr. 439], and *County of Orange v. Orange County Assessment Appeals Bd.* (1993) 13 Cal.App.4th 524, 529–530 [16 Cal.Rptr.2d 695], Eagle asserts that excluding the value of nontaxable intangible assets and rights from property tax assessments is a legal issue because exclusion is required by law. The cited cases, however, did not review valuation decisions calling for the weighing of facts and are wholly inapplicable to the case at bar.

2. *The Record Before the Trial Court Established Triable Issues of Material Fact*

The trial court also erred because even the incomplete record before the court indicated there are triable issues of material fact in dispute.

Under the statutory authority, the court must either grant or deny a motion for summary judgment, based on whether the evidence presents a triable issue

of material fact. (See Code Civ. Proc., § 437c, subd. (c).) In granting Eagle's motion for summary judgment, the court below did not simply grant the motion. The trial court instead embarked on an analysis of the evidence before the Board and made findings that the Board's methodology "necessarily" failed to exclude the value of intangible assets from the assessment of Eagle's property.

The record discloses conflicting evidence making resolution of the propriety of the Board's determination of the hotel's taxable value inappropriate in a summary proceeding. Amicus curiae California State Association of Counties (CSAC), a nonprofit corporation whose membership consists of the 58 California counties, points out that the proper assessment of property is fundamental to the administration of Proposition 13 and that the present case "will affect the assessment of properties in all counties." CSAC argues that, with the exception of the profit participation interest held by the redevelopment agency, the Board's decision affirming the purchase price as the assessed value for the subject property should be upheld. CSAC argues the Board properly accepted the purchase price as the value of the hotel, because under the existing statutory authority the purchase price is presumed to be a property's fair market value. (Rev. & Tax. Code, § 110, subd. (b); *Bret Harte, supra*, 16 Cal.3d at p. 24.)

■ Under the income method, the sum of income attributable to the property is capitalized to reach a value for the property, less an allowance for the risk of partial or no receipt of income. (*Bret Harte, supra*, 16 Cal.3d at p. 24; *De Luz Homes, Inc. v. County of San Diego* (1955) 45 Cal.2d 546, 561–562 [290 P.2d 544].) The income method is based on the assumption that in an open market a willing buyer would pay a willing seller an amount approximately equal to the present value of the income to be derived from the property. (*De Luz Homes*, at pp. 561–562.) It was thus Eagle's burden to establish a different value by presenting evidence to the Board. (Rev. & Tax. Code, § 110, subd. (b); *California Minerals, L.P. v. County of Kern* (2007) 152 Cal.App.4th 1016, 1023 [62 Cal.Rptr.3d 1]; *Maples v. Kern County Assessment Appeals Bd.* (2002) 103 Cal.App.4th 172, 186 [126 Cal.Rptr.2d 585].) As a board of equalization, the Board is a constitutional agency that exercises quasi-judicial powers. (*Shell Western E & P, Inc. v. County of Lake* (1990) 224 Cal.App.3d 974, 979–980 [274 Cal.Rptr. 313].) The Board is vested with special expertise in property valuation and its factual determinations are treated with deference. (*Ibid.*; see *Stenocord Corp. v. City etc. of San Francisco* (1970) 2 Cal.3d 984, 988 [88 Cal.Rptr. 166, 471 P.2d 966] ["disputes regarding valuation are within the special competence of the board of equalization"], superseded by statute on another point as stated in *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1311 [104 Cal.Rptr.3d 195, 223 P.3d 57].)

In the present case, one of the methods Eagle's expert appraiser used to value the hotel property was the income method. However, the expert opined a further deduction should be made from this value for intangibles such as the Hilton franchise, assembled workforce and other profit centers. The deputy assessor, on the other hand, testified that because in his income approach he removed the value of intangibles from the income stream, a further deduction from the valuation for the hotel's service centers would not accurately reflect the property's true value as a full-service lodging facility.

The Board considered the evidence regarding which, if any, amounts should be deducted from the property value to account for the value of intangibles. In doing so, the Board properly weighed the evidence presented by Eagle and the assessor, and the Board appropriately exercised its judgment on the credibility of the testimony and evidence presented, selecting the assessor's valuation over that of Eagle's expert.[11] (*A. F. Gilmore Co. v. County of Los Angeles* (1960) 186 Cal.App.2d 471, 477–478 [9 Cal.Rptr. 67].)

In granting the summary judgment, the court found the assessor's methodology "necessarily failed to exclude from his valuation certain intangible assets, such as a return on the franchise and management expenses, from his going concern valuation methodology," and that the Board's subsequent adoption of the assessor's income approach "is contrary to California law." In making this determination, the court impermissibly weighed and drew inferences from the conflicting evidence.

It is clearly established that "[f]indings of fact and conclusions of law are required after 'the *trial* of a question of fact by the court.' [Citation.] They have no place in summary judgment procedure which seeks to discover whether there is anything to try and is concerned with 'issue finding' not 'issue determination.' [Citations.] A summary judgment proceeding is not a trial on the merits. [Citation.]" (*de Echeguren v. de Echeguren* (1962) 210 Cal.App.2d 141, 148 [26 Cal.Rptr. 562]; see *Walsh v. Walsh, supra*, 18 Cal.2d at p. 441 ["issue finding rather than issue determination is the pivot upon which the summary judgment law turns"].) Based on the record before the trial court, there were triable issues of material fact including whether the assessor's valuation of the hotel, which the Board adopted, appropriately excluded the value of nontaxable intangible assets and whether the Board's methodology, as the trial court found, *necessarily* failed to exclude the value of intangible assets from the assessment of Eagle's property.

The court effectively made a credibility determination in favor of the opinions of Eagle's experts over the opinion of the assessor and his deputy.

---

[11] The Board concluded, "After hearing all oral testimony and exhibits by the applicant and appraiser, the Board finds that the applicant did not meet the burden of proof[;] therefore[,] this application is denied."

Whether the testimony of one group of experts was more persuasive than the expert opinion of another was an issue to be decided by the Board. The role of the trial court and this court is to decide whether substantial evidence supports the Board's finding as to valuation. "The actual weighing of conflicting evidence by the factfinder is a process which can never take place in the context of a summary judgment motion." (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 396 [130 Cal.Rptr.2d 754]; see *Hernandez v. Department of Transportation* (2003) 114 Cal.App.4th 376, 388 [7 Cal.Rptr.3d 536].) In view of the deputy assessor's testimony that his valuation *excluded* in particular the value of intangibles, the trial court could not make a finding that such valuation "necessarily" failed to do so.[12]

"Where a witness has disclosed sufficient knowledge, the question of the degree of knowledge goes more to the weight of the evidence than its admissibility." (*Mann, supra,* 38 Cal.3d at p. 38; see also *Miller v. Silver* (1986) 181 Cal.App.3d 652, 660 [226 Cal.Rptr. 479].) The question of credibility of the experts was a matter to be decided by the Board.

Eagle was not entitled to a trial de novo in the trial court. The question presented to the court was whether " ' "there was evidence of sufficient substantiality before the board to justify the finding [citation], and in the absence of fraud or malicious or arbitrary use of its powers the board is the sole judge of questions of fact and of the values of property. [Citation.]" ' " (*Domenghini v. County of San Luis Obispo* (1974) 40 Cal.App.3d 689, 697 [115 Cal.Rptr. 608].) It is presumed the Board has properly performed the duties entrusted to it and, absent a showing otherwise by the taxpayer, the presumption is that the assessment of the Board is both regularly and correctly made. (See *ibid.*)[13]

---

[12] Specifically, the deputy assessor testified before the Board that he was a licensed assessor with an advanced certificate. Throughout his career at the county assessor's office, he had concentrated on commercial properties, shopping centers, strip retail centers and super centers. More recently, he had specialized in hotel valuation and served as the hotel appraiser for the County. In assessing the hotel in issue, the deputy assessor reviewed overall trends in the hospitality market and submarket. He also studied the hotel's historical operations and made projections of future use based on its history. He projected the hotel's income revenue from all sources and deducted appropriate expenses and projected expenses to arrive at a net operating income. He analyzed market rates to derive a capitalization rate with which to capitalize that income into a value estimate for the property. Deducting furniture, fixtures and equipment from the value estimate resulted in a base value for the property. The deputy assessor verified this value by comparing it to the reported purchase price. He testified he accounted for intangibles by deducting 14.6 percent from total revenue in calculating the value of the property. During the hearing before the Board, he was specifically asked, "So your opinion of the real estate, *just the real estate, not the intangibles, not personal* property, is $73,311,000?" (Italics added.) He answered, "That's correct."

[13] In light of our holding, we need not reach Eagle's cross-appeal of the trial court's order denying attorney fees.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for trial and further proceedings consistent with this opinion. The County is to recover its costs.

Rubin, Acting P. J., and Grimes, J., concurred.