Filed 12/18/14  Strauss v. Aerojet Rocketdyne CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY STRAUSS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AEROJET ROCKETDYNE OF DE, INC.,<br><br>    Defendant and Respondent. | B247439<br><br>(Los Angeles County<br>Super. Ct. No. BC469152) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Reversed in part and affirmed in part.

Golan Law, PC and Jeremy M. Golan; Bent Caryl & Kroll, LLP and Steven M. Kroll for Plaintiff and Appellant.

Seyfarth Shaw LLP, Timothy L. Hix and John T. Anthony III for Defendant and Respondent.

Plaintiff and appellant Paul Strauss (Strauss) appeals a judgment following a grant of summary judgment in favor of defendant and respondent Pratt & Whitney Rocketdyne, Inc. (PWR).[1]

Strauss, a longtime employee of PWR, was diagnosed with multiple myeloma and took time off from work for ongoing chemotherapy treatments. Strauss alleged he was selected for layoff by PWR based on his medical condition and age. PWR justified Strauss's layoff as part of a reduction in force (RIF) due to the economic downturn. PWR contended Strauss was selected for layoff because there would be very little work for him in the future.

We conclude various triable issues of material fact are present, particularly with respect to whether PWR's stated reason was pretextual. Therefore, the judgment is reversed in part and affirmed in part.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

Strauss was born in 1942 and began working for Rocketdyne in 1979. PWR was formed in 2005, when its parent company United Technologies Corporation (UTC) acquired Rocketdyne from Boeing. Strauss's position with PWR was principal engineer in the Structures and Dynamics Department. He was classified as an L4 grade engineer, which is the top grade. Over the years, he received numerous awards and positive evaluations. His employment was at-will.

In August 2009, at age 67, Strauss was diagnosed with multiple myeloma, an incurable and chronic form of blood cancer. He took a four-month leave of absence from PWR and managed the disease with twice-weekly chemotherapy treatments. He returned to work at PWR in late December 2009, with restrictions. A flexible work schedule and the ability to work from home were the only accommodations Strauss requested or needed, and PWR accommodated him. In March 2010, he was cleared by PWR to work

---

[1] Both parties were substituted by successors in interest during the pendency of the appeal. Paul Strauss died in 2013 and was succeeded by his spouse, Mary Strauss. Pratt & Whitney Rocketdyne, Inc. was succeeded by Aerojet Rocketdyne of DE, Inc.

without restrictions. He continued to require intermittent time off for chemotherapy. Due to pressure from Strauss's supervisors regarding his absences, he subsequently revised his chemotherapy treatment schedule to evenings and weekends to reduce time away from the office.

In October 2010, PWR implemented a company-wide RIF due to the economic downturn. Strauss was not selected for the 2010 RIF.

On June 1, 2011, Strauss submitted forms for intermittent leave under the FMLA/CFRA. From June 1, 2011 until his last day of work on July 28, 2011, he continued to take time off to receive needed treatment.

In 2011, PWR implemented another RIF. As part of the 2011 RIF, evaluators were trained and required to consider employees' performance based on the *future* needs of the company, not past performance.

On March 30, 2011, Strauss received a total score of 25 credits and was ranked No. 22 out of the 27 L4 engineers in his department. Thus, five colleagues were ranked beneath him.

On April 5, 2011, following another review, Strauss received the same rating and ranking.

Strauss's supervisor, John Larson, then recommended that Strauss's scores be lowered. According to Larson, "the SSME [Space Shuttle Main Engine] program had far less funding than I had previously assumed, and thus, there would be very little work for [Strauss] going forward." In contrast, the five engineers who were ranked lower than Strauss worked on programs which had significant future work, and Strauss "did not have the skill set to replace any of those five in a reasonable amount of time. Based on this additional information, I recommended that [Strauss's] scores be lowered and that he was the appropriate person to layoff based on the needs of the Engineering department."

In this litigation, Strauss disputed the motivation for the reduction in his score. He cited, inter alia, comments by Larson that "my hours were down and that it was affecting his 'realization' metric [which] measures the entire department's hours worked," and Larson's suggestion "that I retire or work part-time," and that "I might be healthier if I

3

stayed home more.  On other occasions, [supervisor Bonnie Boyce] told me that my time off 'doesn't look good for the group.' "  Strauss also asserted that although the SSME program ended in 2011, PWR's RS25 program for space flight, which uses an SSME derivative engine, continued to the present.  Therefore, his skill set enabled him to work outside the SSME program.[2]

On April 15, 2011, after conducting a third-tier review, Barcza adjusted Strauss's score.  Barcza lowered Strauss's score from 25 (which he had received 10 days earlier) to a final score of 18.  Instead of being ranked at 22 of 27, Strauss now was ranked at number 27, the lowest in the department.  In May 2011, Strauss was selected for layoff.  Of the 27 L4 engineers in his department, Strauss was the sole L4 engineer who was laid off.  He was 69 years old at the time.  His employment ended on July 28, 2011.  This litigation followed.

    2. *Proceedings*.

        a. *Pleadings*.

Strauss commenced this action against PWR on September 8, 2011.  The operative first amended complaint set forth seven causes of action:  (1) medical condition/disability discrimination in violation of the California Fair Employment & Housing Act (FEHA) (Gov. Code, § 12940, subd. (a));[3] (2) failure to provide reasonable accommodation (§ 12940, at subd. (m)); (3) failure to engage in the interactive process (§ 12940, at subd. (n)); (4) age discrimination in violation of FEHA (§ 12940, subd. (a)); (5) failure to take all reasonable steps necessary to prevent discrimination from occurring (§ 12940, subd. (k)); (6) retaliation under the California Family Rights Act (CFRA) (§ 12945.2) for taking medical leave; and (7) wrongful termination of violation of public policy,

---

**2**     William Kevin Barcza (Barcza), PWR's Vice President of the Engineering Organization, acknowledging in his deposition the RS25 was a derivative of the SSME and that work on the RS25 was ongoing.

**3**     All further statutory references are to the Government Code, unless otherwise specified.

predicated on the policies articulated in FEHA and CFRA. The complaint also sought attorney fees and included a prayer for punitive damages.

The gravamen of Strauss's complaint was that discriminatory intent, based on Strauss's medical condition, his need to take medical leave, and his age, were motivating factors in PWR's decision to select him for layoff.

b. *PWR's motion for summary judgment.*

PWR moved for summary adjudication or, in the alternative, summary adjudication. It contended the causes of action for medical condition/disability discrimination and age discrimination were meritless because Strauss's inclusion in the layoff had nothing to do with his medical condition or his age. The causes of action for failure to provide reasonable accommodations and failure to engage in the interactive process likewise were meritless because PWR timely engaged in the process and never refused a single requested accommodation. The cause of action for failure to prevent discrimination was not viable because the underlying discrimination claims failed. The cause of action for retaliation in violation of CFRA was meritless because his inclusion in the 2011 RIF had nothing to do with his having taken medical leave two years earlier, in 2009, and after he had already survived the 2010 RIF. Finally, the cause of action for wrongful termination in violation of public policy was untenable because the underlying statutory claims were meritless.

PWR further argued Strauss had no basis to seek punitive damages because neither Boyce nor Larson was a managing agent of PWR, and in any event, Strauss's layoff was in the context of a legitimate reduction in PWR's workforce due to the economic downturn.

c. *Strauss's opposition.*

Strauss asserted there was ample evidence that PWR selected him for layoff with a discriminatory motive. He cited, inter alia, repeated remarks by Boyce and Larson regarding his time off for chemotherapy treatments. Further, his performance evaluations consistently had been favorable until the final RIF assessment on April 15, 2011. At that

5

time, in order the justify the layoff, Barcza reduced his score from 25 to 18, and lowered his ranking from 22 of 27 to the very bottom of the matrix.

Strauss also disputed PWR's assertion the layoff was justified due to the termination of the SSME program in 2011. He presented evidence that although the SSME program ended in 2011, PWR's RS25 program for space flight, which uses an SSME derivative engine, continued to the present, and therefore, his skill set enabled him to work outside the SSME program. Specifically, Barcza's deposition testimony showed the RS25 was a derivative engine of the SSME and that work on the RS25 was ongoing.

d. *Trial court's ruling*.

On January 31, 2013, the matter came on for hearing. The trial court observed "a reduction in force [is] a little bit different than just firing somebody." In response to plaintiff's counsel's argument that PWR manipulated Strauss's score in order to justify his layoff, the trial court stated, "you disputed the facts, but they pled the facts. *And I find that these are the correct facts*. He was recommended. That's my facts [*sic*]." (Italics added.) Later, the trial court reiterated, "Counsel, on summary judgment, *I can look at the facts presented to me and make findings*. And I'm doing that." (Italics added.)

On March 1, 2013, the trial court entered an order granting summary judgment in favor of PWR as to all seven causes of action. The trial court further ruled punitive damages were unavailable because "Plaintiff cannot raise an issue of fact supporting that an officer, director, or managing agent of Defendant acted with fraud, oppression, or malice." It overruled all of Strauss's objections to PWR's evidence and sustained all of PWR's objections to Strauss's evidence.

Strauss filed a timely notice of appeal from the judgment.

## CONTENTIONS

Strauss contends triable issues exist with respect to his claims for (1) medical condition/disability discrimination; (2) failure to reasonably accommodate; (3) failure to engage in the interactive process; (4) age discrimination; (5) failure to prevent

6

discrimination; (6) retaliation under CFRA; and (7) wrongful termination in violation of public policy.

Strauss further contends the trial court erred in granting summary adjudication as to his request for punitive damages and that it erred in overruling his objections to PWR's evidence.

## DISCUSSION

1. *Standard of appellate review*.

Although the trial court purported to make factual finding in ruling on the motion for summary judgment, it is established the issue at summary judgment "consists of spotting material factual disputes, not resolving them. (*EHP Glendale, LLC v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 270 ['The purpose of summary judgment is not to resolve issues of fact, but rather to determine whether there are issues of fact that must be resolved through a trial'].)" (*People ex rel. City of Dana Point v. Holistic Health* (2013) 213 Cal.App.4th 1016, 1029; accord, *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 856 [trial court may not weigh the plaintiff's evidence or inferences against the defendant's as though it were sitting as the trier of fact].)

Because this appeal follows "the granting of summary judgment, the evidence must be examined according to summary judgment standards. Examining evidence in light of summary judgment standards is far different from applying the substantial evidence test that often governs on appeal. In the judgment after trial context the evidence need only be sufficient to support the judgment for the winning party, even though the evidence might, in another reasonable mind, also have supported a judgment for the losing party. In the summary judgment context, by contrast, the evidence must be incapable of supporting a judgment for the losing party in order to validate the summary judgment. Thus even though it may appear that a trial court took a 'reasonable' view of the evidence, a summary judgment cannot properly be affirmed unless a contrary view would be unreasonable as a matter of law in the circumstances presented." (*Binder v. Aetna Life Ins. Co*. (1999) 75 Cal.App.4th 832, 838; accord, *Faust v. California Portland Cement Co*. (2007) 150 Cal.App.4th 864, 876-877.)

7

The standards applicable to appellate review of a summary judgment ruling are well established. "We independently review an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.*, [*supra*,] 25 Cal.4th [at p.] 860.) We determine whether the court's ruling was correct, not its reasons or rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.) 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504-505.) In performing our de novo review, we view the evidence in the light most favorable to Strauss, as the party opposing summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

2. *Triable issues exist with respect to Strauss's causes of action for medical condition/disability discrimination and age discrimination (first and fourth causes of action).*[4]

    a. *General principles.*

Generally, to make a prima facie showing of employment discrimination under FEHA, the plaintiff must provide evidence that (1) he was a member of a protected class,

---

[4]    The following definitions are germane:

"Medical condition" includes, inter alia, "Any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer." (§ 12926, subd. (i)(1).)

"Physical disability" includes, inter alia, "(1) Having any physiological disease . . . that does both of the following: [¶] (A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine. [¶] (B) Limits a major life activity." (§ 12926, subd. (m).) "Major life activity" includes working. (§ 12926, subd. (m)(1)(B)(iii).)

Age "refers to the chronological age of any individual who has reached his or her 40th birthday." (§ 12926, subd. (b).)

8

(2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).)

Once the plaintiff makes out a prima facie case of discrimination based upon a protected category, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer has done so the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. [Citation.]" (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44, accord, *Faust, supra*, 150 Cal.App.4th at p. 886.)

   b. *Strauss made out a prima facie case of physical disability/medical condition and age discrimination.*

Strauss made out a prima facie case pursuant to the elements set forth in *Guz, supra*, 24 Cal.4th at page 355.

Given Strauss's medical condition and his age at termination (69), it is undisputed he was a member of protected classes.

Strauss's historical evaluations, including the one dated April 5, 2011, ten days before he was downgraded by Barcza, tend to show he was performing competently in the position he held.

Strauss suffered an adverse employment action, in that his employment was terminated.

Further, Strauss presented evidence that circumstances suggested a discriminatory motive. As discussed, Strauss cited, inter alia, comments by Larson that "my hours were down and that it was affecting his 'realization' metric [which] measures the entire department's hours worked," and Larson's suggestion "that I retire or work part-time," and that "I might be healthier if I stayed home more. On other occasions, [supervisor Bonnie Boyce] told me that my time off 'doesn't look good for the group.' " Moreover,

9

Strauss was one of the two oldest engineers in his group, and he was the only one of 27 L4 engineers in the department to be laid off.

### c. *PWR's proffered reason for selecting Strauss for layoff.*

Once Strauss made out a prima facie case, the burden shifted to PWR to offer a legitimate, nondiscriminatory reason for the adverse employment action.

PWR asserted the five employees who had been ranked beneath Strauss had significantly more work than Strauss, and Strauss was selected for layoff because his skills did not translate to the needed work as well as the five other employees who initially had been ranked lower.

PWR's proffered explanation is not dispositive and does not end the analysis. In *Guz*, the employer argued "the exercise of its prerogative to eliminate [the plaintiff's] work unit and position constitutes, as a matter of law, a legitimate, nondiscriminatory reason for his termination. However, [*Guz* explained] downsizing alone is not necessarily a sufficient explanation, under the FEHA, for the consequent dismissal of an age-protected worker. An employer's freedom to consolidate or reduce its work force, and to eliminate positions in the process, does not mean it may 'use the occasion as a convenient opportunity to get rid of its [older] workers.' [Citations.] Invocation of a right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its work force, or engaged in intentional discrimination when deciding which individual workers to retain and release. Where these are issues, the employer's explanation must address them. [Citation.] On the other hand, if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to discriminate illegally." (*Guz, supra*, 24 Cal.4th at pp. 357-358, italics omitted.)

10

d. *Strauss raised a triable issue of material fact with respect to physical disability/medical condition and age discrimination by presenting evidence PWR's stated reason was false or pretextual*.

Once the employer has presented a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must offer evidence that the employer's stated reason is either false or pretextual. (*Faust, supra,* 150 Cal.App.4th at p. 886.) Strauss met his burden in resisting summary judgment.

As indicated, on April 15, 2011, ten days after Strauss earned a score of 25 and a ranking of 22 out of 27 in his department, Barcza lowered his score to 18 and ranked him at the bottom of the department. According to Barcza, the downward adjustment in the third-tier review was based on PWR's "future business needs" because there would be very little work on the SSME program going forward.

However, irrespective of the winding down of the SSME program, Barcza admitted that work on the RS25 project was ongoing, and that the RS25, the next generation engine, was a derivative engine of the SSME. These circumstances raise an inference that Strauss could have been reassigned to work on the RS25 project. Accordingly, whether PWR's stated reason for Strauss's layoff, i.e., there would be very little work for him in the future, was false or pretextual requires resolution by a trier of fact.

Therefore, the grant of summary judgment with respect to the first and fourth causes of action must be reversed.

3. *Triable issue with respect to fifth cause of action for failure to prevent discrimination*.

PWR obtained summary judgment with respect to the fifth cause of action, failure to prevent discrimination, on the ground there is no cause of action for failure to prevent discrimination absent an underlying claim of actual discrimination.

At this juncture, because the first and fourth causes of action for employment discrimination are viable, the grant of summary judgment with respect to Strauss's fifth cause of action for failure to prevent discrimination likewise must be reversed.

11

4. *Triable issue with respect to sixth cause of action for retaliation under CFRA.*

a. *General principles.*

CFRA, which is contained within the FEHA (§ 12900 et seq.), "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606.)

The elements of a cause of action for retaliation in violation of the CFRA are as follows: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised his right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of his exercise of his right to CFRA leave. (*Faust, supra*, 150 Cal.App.4th at p. 885.)

Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture and the burden shifts back to the employee to prove intentional retaliation. (*Faust, supra,* 150 Cal.App.4th at p. 885.)

b. *No merit to PWR's argument that Strauss admitted he was not retaliated against for having taken extended leave in 2009.*

In moving for summary judgment, PWR contended the cause of action for retaliation in violation of CFRA failed because Strauss could not show a nexus between his medical accommodations and his inclusion in the RIF.

At this juncture, PWR argues no triable issue exists with respect to the CFRA retaliation claim because Strauss admitted in his deposition that he did not suffer retaliation for having taken extended leave in 2009.

PWR's focus on the 2009 leave period is misplaced. PWR misconstrues Strauss's claim. Strauss did not contend he suffered retaliation based on the 2009 absence. Rather,

12

Strauss contended he was selected for layoff in 2011 due to absences *subsequent to* the 2009 leave period.[5]

        c. *Triable issue of material fact as to whether Strauss was selected for layoff in May 2011 in retaliation for absences preceding the layoff decision.*

Strauss made out a prima facie case of retaliation by presenting evidence that he was entitled to leave under the CFRA, he availed himself of that right, and was terminated for taking the leave to which he was entitled.

The burden then shifted to PWR to present evidence to establish a legitimate, nonretaliatory reason for the discharge. PWR asserted it had a legitimate nonretaliatory reason for laying off Strauss because he was the lowest ranked employee in his department and it had insufficient work to retain Strauss as an employee. As already discussed, the circumstances of Strauss's layoff raise a triable issue of material fact as to pretext. Accordingly, the grant of summary judgment with respect to the sixth cause of action for retaliation under CFRA was erroneous.

5. *No triable issue of material fact with respect to second cause of action for failure to provide reasonable accommodation.*

PWR's theory on summary judgment is that it provided Strauss with every accommodation he requested or needed. Its position is supported by the record.

The undisputed evidence is as follows: Strauss requested a leave of absence for a prolonged hospital stay and recovery (August 17, 2009 to December 21, 2009), which PWR granted. Upon his return from medical leave in December 2009, PWR allowed Strauss to work from home with decreased hours. The flexible work schedule and ability to work from home were the only accommodations Strauss requested or needed from December 31, 2009 to March 8, 2010, and PWR provided it to him. From March 8, 2010 to June 1, 2011, Strauss did not require any additional accommodations from PWR.

---

[5]    Although Strauss took additional medical leave between June 1 and July 28, 2011, the CFRA retaliation claim properly is limited to medical leave which Strauss prior to May 2011, the date of the layoff decision.

13

Strauss testified at deposition that he "didn't need any further accommodation after March 8th, 2010, from Rocketdyne." Further, "if [he] had needed some other type of accommodation from Rocketdyne, [he] would . . . have gone to the medical office to request that[.]"

In resisting summary judgment, Strauss attempted to dispute the above with his declaration testimony that he required time off for chemotherapy treatments, and that he told PWR's medical department and human resources department that he required time off for chemotherapy.

However, Strauss cannot raise a triable issue in this regard by submitting a declaration which contradicts his deposition testimony. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 961.) On the record presented, there is no triable issue of material fact on Strauss's cause of action against PWR for failure to provide reasonable accommodation under FEHA (§ 12940, subd. (m).) Therefore, the trial court's ruling with respect to the second cause of action must be affirmed.

6. *No triable issue with respect to third cause of action for failure to engage in interactive process.*

Section 12940 at subdivision (n) makes it an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant *to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee* or applicant with a known physical or mental disability or known medical condition." (Italics added.)

As discussed above, the undisputed evidence established: PWR granted Strauss's request for a leave of absence from August 17, 2009 to December 21, 2009; upon Strauss's return from medical leave in December 2009, PWR approved a flexible work schedule and the ability to work from home, which were the only accommodations Strauss requested or needed until March 8, 2010; Strauss "didn't need any further accommodation after March 8th, 2010, from Rocketdyne"; and "if [he] had needed some

14

other type of accommodation from Rocketdyne, [he] would . . . have gone to the medical office to request that[.]"

Because the undisputed evidence established PWR provided Strauss with every accommodation he needed, no triable issue exists with respect to Strauss's cause of action for "fail[ure] to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations[.]"  (§ 12940, subd. (n).)

Therefore, the trial court's ruling with respect to the third cause of action must be affirmed.

7.  *Triable issue with respect to seventh cause of action for wrongful termination in violation of public policy.*

The public policies embodied in FEHA and CFRA give rise to a cause of action for tortious wrongful discharge in violation of public policy.  (*Faust, supra,* 150 Cal.App.4th at p. 886.)  Because Strauss has viable claims under FEHA and CFRA, it necessarily follows that a triable issue exists with respect to the seventh cause of action for wrongful termination in violation of public policy.  (*Ibid*.)

8.  *Trial court erred in striking demand for punitive damages; triable issue as to whether Barcza was a managing agent of PWR.*

It is settled that punitive damages are recoverable in actions brought under FEHA. (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1147-1148.)  Punitive damages may be awarded against an employer where a plaintiff proves, by clear and convincing evidence, that a managing agent engaged in misconduct with malice, oppression or fraud.  For purposes of the imposition of punitive damages against an employer, "[a]n employee is a 'managing agent' if he or she exercises substantial independent authority and judgment in his or her corporate decisionmaking such that his or her decisions ultimately determine corporate policy."  (CACI No. 3943.)

The Barcza declaration, which PWR submitted as part of its moving papers, indicates that Barcza was Vice President of PWR's Engineering Organization, that "managers and supervisors report[ed] to [him]," and that he made the final adjustment to

15

Strauss's score, based on what he "believed to be in the best interest of the future business needs of PWR."

Given Barcza's role at PWR, it cannot be said as a matter of law that Barcza was not a managing agent of PWR. Accordingly, the issue of whether Barcza was a managing agent of PWR is one for the jury.[6]

Therefore, the trial court erred in striking the prayer for punitive damages.

9. *Evidentiary issues*.

Strauss makes a blanket assertion the trial court abused its discretion in overruling his evidentiary objections to PWR's supporting evidence. Strauss fails to specify the evidentiary rulings of which he complains. For example, he makes a generalized argument that the trial court erred "by making certain evidentiary rulings against [him]," and that "[n]umerous exhibits also contained inadmissible hearsay." Further, Strauss fails to show he was prejudiced by the purportedly erroneous admission of PWR's evidence. (Evid. Code, § 353, subd. (b) [reversal for erroneous admission of evidence requires showing of prejudice].)

In any event, Strauss's evidentiary arguments have no bearing on our analysis of the causes of action addressed *ante*.

---

[6] PWR argued below that Strauss failed to show that Barcza "had sufficient independent authority in order to set corporate policy which is required in order to find him a 'managing agent.' " However, at the summary judgment stage, the burden was upon PWR, as the movant, to show Barcza was *not* a managing agent.

16

## DISPOSITION

The judgment is affirmed solely with respect to the second cause of action (failure to provide reasonable accommodation) and third cause of action (failure to engage in interactive process). In all other respects the judgment is reversed. Appellant shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

17