[No. B157527. Second Dist., Div. Seven. Dec. 15, 2003.]

KATHLEEN HERNANDEZ et al, Plaintiffs and Appellants, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

ROCHELLE RAMOS, Plaintiff and Appellant, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

**COUNSEL**

Bisnar & Chase and Brian D. Chase for Plaintiffs and Appellants Kathleen Hernandez, Eloise Hernandez and Dominic Hernandez.

Paul Rolf Jensen for Plaintiff and Appellant Rochelle Ramos.

Bruce A. Behrens, David R. Simmes and Ruth W. Yeager for Defendant and Respondent.

**OPINION**

**PERLUSS, P. J.**—Kathleen Hernandez, the family of Ashlee Hernandez and Rochelle Ramos filed a lawsuit[1] against the California Department of Transportation (Caltrans) after Ramos and Kathleen Hernandez were injured and Ashlee Hernandez was killed in an automobile accident at the Lower Azusa Road off-ramp on the Interstate 605 freeway. They contend the lack of a guardrail at the accident location constituted a dangerous condition of public property. The trial court granted Caltrans's motion for summary judgment, finding the action was barred by statutory design immunity as a matter of law. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the undisputed facts presented in connection with Caltrans's motion for summary judgment, the accident at issue in this case occurred on September 10, 1999. Plaintiffs were passengers in a Toyota Camry driven by Melinda Martinez. The Camry was pursued by a Kia driven by Ramos's former boyfriend Raul Contreras, Jr. The Kia chased the Camry from surface

---

[1] The Hernandez family and Ramos filed separate actions, which were ultimately consolidated in the trial court. For purposes of clarity, we will refer to all plaintiffs collectively as "Hernandez."

streets in West Covina to the Interstate 10 freeway and then to the northbound Interstate 605 freeway. The cars were traveling at a high speed when Contreras intentionally rammed the Camry. Frightened, Martinez attempted to exit the freeway at the Lower Azusa Road off-ramp, with Contreras still in pur suit. The Camry, which was then traveling at 75 to 80 miles per hour, struck a Dodge Caravan and skidded off the roadway and down an embankment. Ashlee Hernandez was killed; Kathleen Hernandez was rendered paraplegic; and Ramos allegedly suffered brain injuries.[2] Hernandez sued Caltrans, alleging the lack of a guardrail at the site of the accident constituted a dangerous condition of public property pursuant to Government Code section 835.[3]

Caltrans moved for summary judgment (the motion) on four grounds: (1) It could not be liable because it had no duty to protect Hernandez against the unforeseeable criminal acts of Contreras; (2) Hernandez could not establish "dangerous condition" liability as a matter of law because the off-ramp was not being used with due care and in a reasonably foreseeable manner when the accident occurred; (3) Hernandez could not prove Caltrans had either actual or constructive notice of any dangerous condition at the accident site; and (4) Caltrans had an absolute defense to the action based on the design immunity provisions of Government Code section 830.6.[4]

---

[2] Contreras was convicted of murder and related charges and sentenced to 32 years to life in state prison.

[3] Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[4] Government Code section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor. Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity

Hernandez opposed the motion, arguing (1) although Caltrans owed no duty to protect her from the unforeseeable criminal acts of third parties, it owed a duty to prevent dangerous conditions of public property such as that allegedly existing at the accident site; (2) the existence of a dangerous condition at the off-ramp is a question of fact that, based on the conflicting evidence presented by the parties, cannot be resolved on summary judgment; (3) Caltrans had evidence of three previous "run-off-the-road" accidents near the accident site within the 18 months preceding the accident; and (4) triable issues of fact existed as to the applicability of the design immunity defense.

With respect to the discretionary approval element of Caltrans's design immunity affirmative defense, with its summary judgment motion Caltrans presented evidence that the off-ramp at issue was part of a construction project designed in the late 1960's and completed in May 1971. The off-ramp was built as designed without guardrails at the location where the Martinez car left the roadway. The design plan shows the existence of the embankment, its approximate height and slope and the locations where guardrails were to be placed—a total of 875 feet of guardrail along the 1575-foot ramp, 600 feet of railing at the top of the ramp and 275 feet at the bottom. Caltrans also produced the certified "as-built" plans signed by officials with authority to approve them. Caltrans's expert testified to the normal approval process utilized by Caltrans when the project was designed and opined that the signatures on the as-built plans indicate that the individuals who signed had approved the design contained in the plans prior to construction of the off-ramp.

In opposition Hernandez presented evidence that the off-ramp as designed violated Caltrans's then applicable guardrail-installation guidelines, which, according to Hernandez's expert, required installation of an embankment guardrail along the entirety of the ramp under the analysis prescribed by the state's "guardrail need determination curve."[5] Any deviation from the

---

or other body or employee, or with a plan or design in conformity with a standard previously approved by such legislative body or other body or employee. In the event that the public entity is unable to remedy such public property because of practical impossibility or lack of sufficient funds, the immunity provided by this section shall remain so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of the condition not conforming to the approved plan or design or to the approved standard. However, where a person fails to heed such warning or occupies public property despite such warning, such failure or occupation shall not in itself constitute an assumption of the risk of the danger indicated by the warning."

[5] Hernandez's expert, former Caltrans traffic engineer Robert Douglas, opined that "Caltrans initially installed embankment guardrail at the 600-foot top-of-offramp location under § 8-604.2 of its applicable 1966 Traffic Manual because of the perceived high 'run-off-the-road probability.' However, such high 'run-off-the-road probability' was even higher at the location of Plaintiff's accident." Accordingly, according to Douglas "Caltrans' own applicable embankment guardrail guidelines specifically called for guardrail to be installed at the subject offramp

applicable guidelines required the designer to obtain formal approval, which would be recorded in a "project approval document." Hernandez noted (and Caltrans did not dispute) that no "project approval document" for the off-ramp could be located. At his deposition Caltrans's expert acknowledged that he did not know whether any of the three engineers who signed the as-built plans actually considered the guardrail installation guidelines and approved the purported deviation from the guidelines' requirements.

At a hearing on December 4, 2001, the trial court found triable issues of fact existed as to the presence of a dangerous condition at the site of the accident. In a memorandum of decision dated January 26, 2002, however, the trial court granted Caltrans's motion on the ground of design immunity. It ruled that, in order to establish design immunity on summary judgment, Caltrans was required to show substantial evidence of (a) discretionary approval of the design for the off-ramp and (b) reasonableness of the design. It found Caltrans had met that burden, concluding that, "[w]hile the inference made from the absence of guardrails is not strong enough to amount to 'substantial evidence' that someone must have evaluated the situation and exercised discretion with respect to the need for guardrails, the presence of guardrails on the plans [at the top and bottom of the off-ramp, but not at the location of the accident,] is 'substantial evidence.' " The court rejected Hernandez's argument that the design violated the state's guardrail guidelines and the required approval for such a deviation had not been proved, finding from the evidence presented "that the plans cannot be said to not conform to state standards for guardrails . . . ."[6] The court also found there was insufficient evidence, as a matter of law, of changed circumstances that would cause the design immunity to be lost. Judgment was entered in favor of Caltrans.

## CONTENTIONS

Hernandez contends the trial court erred in holding the discretionary

---

accident location because the slope and embankment heights there fell well above the 'Guardrail Need Determination' curve [in the guidelines], and since there was a perceived high run- off-the-road probability at the top 600 feet of the offramp (where other embankment guardrail was installed), the probability was even substantially higher at the Plaintiff's offramp accident location. Caltrans' failure to have installed guardrail on the portion of the offramp embankment where Plaintiffs' accident in this case occurred, in my opinion, was in violation of Caltrans own 1966 Traffic Manual's embankment guardrail guidelines, specifically § 8-604.2."

[6] The trial court acknowledged the existence of the guardrail installation guidelines, but concluded "the evidence convinces me that the off-ramp did not have a high 'run off the road probability' at the time it was built. Therefore, the plans cannot be said to not conform to state standards for guardrails at the time built . . . ."

approval element of the design immunity defense is a question of law for the court and granting summary judgment based on substantial evidence of discretionary approval when that evidence was disputed by other evidence and inferences.

## DISCUSSION

### 1. Standard of Review

The standard of review on appeal after an order granting summary judgment is well settled. "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' (Code Civ. Proc., § 437c, subd. (*o*)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854–855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

In reviewing the evidence, we strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed only those portions of the moving party's evidence that are uncontradicted. "Only when the inferences are indisputable may the court decide the issues as a matter of law. If the evidence is in conflict, the factual issues must be resolved by trial. 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' [Citation.]" (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540]; see also *Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1365 [27 Cal.Rptr.2d 681] ["doubts as to the propriety of granting the motion should be resolved in favor of the opposing party"].)

### 2. *The Trial Court Erred in Granting Summary Judgment Based on Design Immunity*

"The State is not liable for a defect in the design plan for a public improvement if it can establish the three elements that constitute the design immunity affirmative defense. The State must show: (1) a causal relationship between the project design and the accident; (2) discretionary approval of the design prior to construction; and (3) substantial evidence supporting the reasonableness of the design. [Citations.]" (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 727 [95 Cal.Rptr.2d 719] (*Alvarez*); *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 [109 Cal.Rptr.2d 1, 26 P.3d 332] (*Cornette*); see also Gov. Code, § 830.6.) The parties do not dispute the existence of the first and third elements for purposes of the motion. Relying on established rules governing summary judgment, Hernandez contends Caltrans failed to establish the absence of triable issues of material fact with respect to the second element. Caltrans, on the other hand, contends all elements of design immunity are legal issues for the court and its only burden was to show substantial evidence there was discretionary approval of the off-ramp plans prior to construction. The trial court agreed with Caltrans. We do not.

In its memorandum of decision the trial court extensively discussed two Court of Appeal decisions: *Alvarez, supra,* 79 Cal.App.4th 720, in which the court affirmed a summary judgment based on the design immunity defense; and *Levin v. State of California* (1983) 146 Cal.App.3d 410 [194 Cal.Rptr. 223] (*Levin*), in which the court reversed such a summary judgment. Hernandez contends, and we agree, that the trial court erred in following *Alvarez* and failing to apply the rationale of the Supreme Court's decision in *Cornette, supra,* 26 Cal.4th 63, which recognized that the second element of the design immunity defense is a question of fact for the jury.

#### a. *Alvarez v. State of California*

Both in the trial court and on appeal Caltrans has relied on *Alvarez, supra,* 79 Cal.App.4th 720, in which the Fifth District affirmed the trial court's grant of summary judgment on the ground of design immunity, holding that "[w]hether each element of design immunity exists is a question of law." (*Id.* at p. 728.) In *Alvarez* the plaintiff contended the lack of a median barrier on State Route 99 constituted a dangerous condition. (*Id.* at p. 727.) The state moved for summary judgment based on design immunity. (*Ibid.*) In support of the second element of the design immunity defense, the state presented a copy of the "as built plans" for the project in question and "the declarations

of former and current Caltrans employees [describing] the discretionary approval process for roadway designs in general and for the Project in particular . . . ." (*Id.* at p. 728.)[7]

The plaintiff contended the state's evidence was insufficient to meet its burden of establishing "that the dangerous feature of the design was approved by an 'employee exercising discretionary authority to give such approval.' [Citation.]" (*Alvarez, supra,* 79 Cal.App.4th at p. 728.) The court, however, held that the "[as-built] plans themselves provide evidence that the Project design was given the requisite discretionary approval prior to construction." (*Id.* at p. 725.) The court rejected the contention that discretionary approval can be proved only by testimony from the person who signed the documents or someone who was present when they were signed. It held that expert testimony was admissible to prove the state's "discretionary approval custom and practice." (*Id.* at p. 732 ["As an expert, Berner could competently testify to the State's custom and practice of discretionary design review and approval during the relevant time period. He could competently interpret and explain the Project plans, identify the officials involved the review and approval process at the district and state level, and explain their role in the discretionary approval process even though he was not personally involved in the Project's approval."].)

In affirming the trial court's order granting summary judgment, the Court of Appeal concluded: "In summary, the Project plans indicate the design was approved prior to construction by at least four State officials whose stated capacities indicate they had the discretionary authority to approve the plans. The evidence, coupled with Telesco's and Berner's declarations explaining the custom and practice of design review and approval and identifying the signing parties, was substantial evidence of discretionary approval. . . . [¶] Discretionary approval simply means approval in advance of construction by the officer exercising discretionary authority. [Citation.] . . . [A] detailed plan,

---

[7] Anthony J. Telesco, the project engineer who prepared the plans, declared that he had submitted them to both his supervisor and the district engineer, who exercised their discretionary authority to approve the plans by permitting them to proceed to the next level for approval. Both of those engineers could have rejected the plans by refusing to sign them, which would have required the project engineer to redesign the project. (*Alvarez, supra,* 79 Cal.App.4th at p. 729.)

The state also provided a declaration from Kenneth C. Berner, a former Caltrans employee, which described the approval process: "Based on his lengthy employment with Caltrans, his design work responsibilities and his familiarity with the design review and approval process, Berner described the State's custom and practice in providing discretionary approval of roadway designs during the late 1960's when the Project was designed and constructed. Berner stated he was 'personally familiar' with the four state officials who approved and signed the Project plans. Those officials had the discretionary authority to approve the Project plans. Their signatures showed they in fact exercised their discretionary authority and approved the plans." (*Alvarez, supra,* 79 Cal.App.4th at pp. 729–730.)

drawn up by a registered professional civil engineer, and approved by four district and State officials in the exercise of their discretionary authority is sufficient to establish the prior approval element of design immunity." (*Alvarez, supra,* 79 Cal.App.4th at p. 734.)

As the trial court in the present case noted in its memorandum of decision, "the burden of proof applied in *Alvarez* seems to be the same as that stated in the third element, that of 'substantial evidence.' Therefore, [under *Alvarez*] the burden is on the state to show 'substantial evidence' of both the second and third elements."

### b. *Levin v. State of California*

The trial court's memorandum of decision acknowledged that a different result was reached in *Levin, supra,* 146 Cal.App.3d 410, a wrongful death action alleging the lack of a median barrier and guardrails on a portion of State Highway 37 constituted a dangerous condition of public property. (*Id.* at p. 415.) In *Levin* the state moved for summary judgment on the ground of design immunity. (*Id.* at pp. 413–414.) In order to establish discretionary approval the state presented evidence that the design changes at issue (the 1974 changes) were approved by J.A. Legarra, a deputy highway engineer who had approval authority. (*Id.* at p. 417.) The state also proffered the deposition testimony and reports of Victor Graf, a senior transportation engineer with the state who was a consultant on the relevant design project. (*Ibid.*) Graf testified he "specifically considered the placement of a median barrier and exterior guardrails, but concluded that neither was advisable on this particular stretch of Highway 37." (*Id.* at p. 418.)

In opposition to the motion the plaintiffs presented evidence the highway was altered in 1974 and the new design was unsafe because "the south shoulder was deficient and substandard and should have been provided with guardrails [at the edge of a steep embankment]." (*Levin, supra,* 146 Cal.App.3d at p. 416.) Their expert opined that "[t]he conditions described in the Division of Highways 1971 Traffic Manual, promulgating standards (warrants) for guardrails [fn. omitted] were present, and should have been followed." (*Ibid.*) The state did not challenge the existence and application of the guardrail standards cited by the plaintiffs, yet there "was no evidence that Legarra had discretionary authority to disregard the standards." (*Id.* at p. 418.) The Court of Appeal reversed the judgment, stating: "As our Supreme Court pointed out in *Cameron v. State of California* (1972) 7 Cal.3d 318, 326 [102 Cal.Rptr. 305, 497 P.2d 777], the rationale of the design immunity defense is to prevent a jury from simply reweighing the same factors considered by the governmental entity which approved the design. An

actual informed exercise of discretion is required. The defense does not exist to immunize decisions that have not been made. Here, as in *Cameron, supra,* 7 Cal.3d 318 the design plan contained no mention of the steep slope of the embankment. The state made no showing that Legarra, who alone had discretionary authority, decided to ignore the standards or considered the consequences of the elimination of the eight feet shoulder. It follows that the state also failed to establish the second element of the defense." (*Ibid.*)

The trial court in the present case noted that what distinguishes *Levin* from *Alvarez* is that in *Levin* the state "failed to show that the official who exercised the discretionary authority to approve the design was aware the roadway did not conform to [the governing guardrail] standards." (*Alvarez, supra,* 79 Cal.App.4th at p. 735.) Although Hernandez presented evidence that, as in *Levin,* the off-ramp design at issue in the instant case violated the applicable guardrail standards and, also as in *Levin,* Caltrans had no evidence that any deviations from the governing standards were knowingly approved, the trial court nonetheless concluded *Alvarez,* rather than *Levin,* was controlling based on its own determination, after weighing the evidence, that the off-ramp plans did conform to state standards for guardrails at the time built. In denying Hernandez's motion for a new trial, the trial court explained "all three of the issues necessary to establish design immunity are legal issues for the court to decide." In its view *Cornette, supra,* 26 Cal.4th 63 did not abrogate this rule.

### c. *Cornette v. State of California*

In *Cornette, supra,* 26 Cal.4th 63, the Supreme Court held where triable issues of material fact are presented, "a plaintiff has the right to a jury trial as to the issues involved in loss of design immunity." (*Id.* at p. 67.) The court explained: "The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design. [Citation.] ' " '[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.' " [Citation.]' [Citation.]" (*Id.* at p. 69.) Thus, "the resolution of the third element of design immunity, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, [is] a matter for the court, not the jury." (*Id.* at p. 72.) However, the Supreme Court disapproved, at least implicitly, "several opinions of the Court of Appeal that state that *all* of the elements necessary to establish design

immunity are legal issues for the court to decide." (*Id.* at p. 74.) It noted "this view was expressed 'without critical comment or explanation and without reference to the text of [section 830.6]' " (*ibid.*), and emphasized that the Supreme Court itself had never said "or even suggest[ed] that the first two elements of design immunity . . . were issues of law for the court to decide if it were not ruling on a motion for a directed verdict." (*Id.* at p. 75.) To the contrary, it explained that of the three elements of design immunity, only one—the existence of substantial evidence supporting the reasonableness of the design—was expressly reserved by the Legislature for the court. (*Id.* at p. 73.)[8]

Caltrans argues that *Cornette* is not controlling in this case because that decision dealt, not with the three elements necessary to establish design immunity in the first instance, but with "[whether] plaintiff has a right to a jury trial as to the issues involved in loss of design immunity." (*Cornette, supra,* 26 Cal.4th at p. 67; see *id.* at p. 73 ["the one element of design immunity the Legislature did expressly reserve for the court, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, differs significantly from the three elements of loss of design immunity"].) Although Caltrans is correct as to the precise holding of *Cornette,* we decline to limit the Supreme Court's explanation of the nature of the design immunity defense and the appropriate division of responsibilities between the court and jury as narrowly as Caltrans urges.

In confirming that the third element of the design immunity defense was to be tried to the court, not a jury, the court in *Cornette* explained: " '[I]n enacting section 830.6, the Legislature was concerned lest juries be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan.' [Citation.] The questions involved in loss of design immunity, e.g., whether the plan or design has become dangerous because of a change in physical conditions, are not the identical questions considered by the government officials who adopted or approved the plan. Therefore, the Legislature would arguably not have had the same rationale for taking such questions away from the jury." (Cornette, supra, 26 Cal.4th at p. 73.) Similarly, the question whether state officials did in fact exercise discretion in approving the plans at issue is not a question that was reviewed by government officials at the time of the adoption or approval of the plan. Rather, this question (as well as the first

---

[8] The Supreme Court's opinion in *Cornette* also makes it clear that, in reserving the third element of design immunity for the court's determination, Government Code section 830.6 does not make the question whether substantial evidence supports the reasonableness of the plan or design an "issue of law" in all instances, but simply a question to be decided by the court itself, rather than the jury. (*Cornette, supra,* 26 Cal.4th at pp. 72–74.)

element of causation) requires a case-specific factual determination that must be left to the jury when there is conflicting evidence. (See *Levin, supra,* 146 Cal.App.3d at p. 418; see also *Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 55–58 [108 Cal.Rptr.2d 198] [affirming summary judgment for the state on the ground of design immunity but recognizing that summary judgment would have been improper if the plaintiff had raised a triable issue of fact whether project plans at issue deviated from the applicable general design guidelines for installation of median barriers].)

### d. *Triable Issues of Fact Exist as to the Second Element of the Design Immunity Defense*

Conflicting evidence was presented in the trial court as to whether the off-ramp design at issue in this case deviated from the applicable guardrail standards and, if so, whether that deviation was knowingly approved by the responsible Caltrans authorities. Under the rationale of *Cornette, supra,* 26 Cal.4th at pages 72 to 74, the trial court's order granting summary judgment in favor of Caltrans based on inferences drawn from conflicting evidence was error. (See *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926 [68 Cal.Rptr.2d 571] [court's function on summary judgment is issue finding, not issue determination]; *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122] [trial court may not decide the merits of the issues themselves]; *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 39 [210 Cal.Rptr. 762, 694 P.2d 1134] [trial court may not weigh credibility of the parties' evidence].) Indeed, even if we were to conclude that the second element of the design immunity defense is properly determined by the court, rather than a jury, this patently factual question—were the design plans in fact approved by authorized Caltrans officials—cannot properly be decided on summary judgment when conflicting evidence has been presented. (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 396 [130 Cal.Rptr.2d 754] ["The actual weighing of conflicting evidence by the factfinder is a process which can never take place in the context of a summary judgment motion."]; *Hamilton v. Martinelli & Associates* (2003) 110 Cal.App.4th 1012, 1019 [2 Cal.Rptr.3d 168] [" 'The purpose of a motion for summary judgment is "to discover whether the parties possess evidence requiring the fact-weighing procedures of a trial." ' "].) Accordingly, we reverse the judgment in favor of Caltrans.[9]

---

[9] Because Caltrans has not urged affirmance on any of the other grounds raised in its motion for summary judgment, we need not address those issues.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion. Hernandez is to recover her costs on appeal.

Johnson, J., and Zelon, J., concurred.

A petition for a rehearing was denied January 6, 2004, and respondent's petition for review by the Supreme Court was denied March 24, 2004.