Filed 2/28/14  Randy's Trucking v. State of California Dept. of Transportation CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RANDY'S TRUCKING, INC. et al., | F065447 |
| Plaintiffs, Cross-complainants and Appellants, | (Super. Ct. No. S-1500-CV-263835) |
| v. | |
| STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION, | **OPINION** |
| Defendant, Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Manning & Kass, Ellrod, Ramirez, Trester, Darin L. Wessel; Ericksen Arbuthnot, Michael D. Ott for Plaintiffs, Cross-complainants and Appellants.

Ronald W. Beals, Chief Counsel, Jeanne Scherer, Deputy Chief Counsel, Douglas L. Johnson, Assistant Chief Counsel, and Bruce D. McGagin, Counsel for Defendant, Cross-defendant and Respondent.

-ooOoo-

Fernando Sandoval drove a tractor-trailer rig across a set of railroad tracks in Shafter and stopped at the stop line marked for an intersection a short distance beyond the tracks. The distance between the stop line and the tracks was too short for the rig. Before Sandoval could proceed through the intersection, an Amtrak train traveled down one of the tracks and struck the trailer, destroying it. The truck's owner, Randy's Trucking, Inc., sued the state, through the Department of Transportation (Caltrans), alleging a dangerous condition of public property. The trial court granted summary judgment for Caltrans, relying on a statutory defense known as design immunity. (Gov. Code, § 830.6.) We affirm.

### FACTS AND PROCEDURAL HISTORY

The accident took place on July 19, 2007. According to witness statements cited in the traffic collision report prepared by a police officer, Sandoval drove westbound on Los Angeles Avenue, crossing the railroad tracks as a crossing gate began to lower and a crossing signal was activated.[1] Sandoval stopped his truck at the intersection of Los Angeles Avenue and Central Valley Highway. The trailer was on the tracks. An Amtrak train arrived at the crossing and struck the trailer. The Amtrak engineer said he sounded his horn when he saw the trailer on the tracks and began emergency braking when he saw that it was not moving, but the train could not stop in time. Sandoval said he did not see the crossing gates lowering or the train coming; did not hear the crossing signal or the train horn; and was not aware of the danger until he heard the crash. The trailer was torn from Sandoval's truck and severely damaged. The train's engine was damaged and its passenger cars were derailed. The rear windshield of a car stopped at the intersection

---

[1]Caltrans's expert, testifying at a deposition, appeared to concede that Sandoval had already crossed the tracks and stopped at the stop sign by the time the crossing gates and signal were activated. Neither side claims the question of whether Sandoval crossed the tracks before or after the gates and signal were activated has any bearing on whether the summary judgment motion was properly granted.

2.

sustained minor damage from flying debris. The collision report stated that it appeared no one was injured.

Randy's Trucking, Inc., and Star Insurance Company, which were the owner and insurer of the truck driven by Sandoval, filed a complaint in Kern County Superior Court against Caltrans, the City of Shafter, Kern County, the National Railroad Passenger Corporation (i.e., Amtrak), and the Burlington Northern Santa Fe Railroad. Defendants removed the case to federal district court, which remanded it to the superior court as to Caltrans only. Several related actions naming Randy's Trucking, Inc., Sandoval, and others as defendants were filed; in these actions, Randy's Trucking, Inc., and Sandoval cross-complained against Caltrans. The related actions were then consolidated with this case. The claims against Randy's Trucking, Inc., and Sandoval were settled by a $3 million payment by Star Insurance Company.

In the complaint and cross-complaint operative at the time of the motion for summary judgment, Randy's Trucking, Inc., Star Insurance Company, and Sandoval (hereafter collectively Randy's Trucking) alleged one cause of action for premises liability, and more specifically for a dangerous condition of public property, against Caltrans. These pleadings stated: "The stop sign and stop limit line at which RANDY'S rig was stopped at the time of the accident was located in such a way that when RANDY'S rig was stopped legally at said stop sign and stop limit line, a portion of that rig was actually and necessarily located on the railroad tracks. This left RANDY'S rig in jeopardy of being struck by a train traveling on those tracks, which is exactly what happened."

Caltrans filed a motion for summary judgment. The motion first argued that Caltrans was protected by design immunity. This is the defense established by Government Code section 830.6:[2]

---

[2]Subsequent statutory references are to the Government Code unless otherwise noted.

3.

"Neither a public entity nor a public employee is liable under this chapter [i.e., ch. 2, Dangerous Conditions of Public Property, of pt. 2 of the Government Claims Act, Gov. Code, § 810 et seq.] for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved … by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6.)

To support this defense, Caltrans relied on its engineering plans for the intersection. The plans bore notations showing that the design of the intersection was approved by engineers with authority to approve them and that the intersection was, after approval, built in accordance with the approved design.

Caltrans conceded, however, that the stop sign and stop line shown on the plans were "not plotted on a scaled drawing which identifies the specific location of each item." It was necessary for the field engineer to exercise engineering judgment to determine the appropriate placement in light of actual conditions. Caltrans maintained that, in spite of this, "the designs for the stop sign and stop bar were approved prior to the actual construction of" them. Caltrans's point appears to have been that, when officials approved the plans, they understood that the field engineer would have to exercise judgment in determining the placement of the stop sign and line, and their approval of the plans constituted approval of this exercise of judgment.

Caltrans argued that, even if the approved plans did not suffice to establish the design-immunity defense, the fact that the stop sign and line were placed in accordance with preexisting standards did establish it. Caltrans's Traffic Manual and Highway Design Manual call for placement of a stop line between four and 30 feet back from the

4.

edge of the traveled portion of the intersecting road. The line's placement was within these limits.

Caltrans supported the reasonableness requirement of section 830.6 with an expert opinion. Caltrans's expert stated in a declaration that the field engineer's decision about where to place the stop line was reasonable because placing the line closer to the intersecting road would have reduced the available space for tractor-trailers turning left from southbound Central Valley Highway onto eastbound Los Angeles Avenue.

Next, Caltrans argued that if it has not established the design-immunity defense, summary judgment should still be granted because Randy's Trucking was unable to show a dangerous condition of public property in the first place. Caltrans asserted that, although a history of similar accidents involving trains at the same intersection could potentially show a dangerous condition, insufficient admissible evidence existed to show such a history.

In its opposition to the motion for summary judgment, Randy's Trucking relied on expert opinion that if Caltrans's plans for the intersection were intended to show the position of the stop line, then the actual line was placed 10 feet closer to the railroad tracks than the planners intended. The line could have been placed 10 to 11 feet farther from the tracks (and closer to the intersection) and still been within regulatory guidelines. If it had been, the accident probably would not have happened. This meant Caltrans could not avail itself of the design-immunity defense: The intersection was not constructed in accordance with the approved plans, and the variance caused the accident. On the other hand, if, as Caltrans admitted, the plans were not intended to show a specific location for the stop line and the placement decision was made by the field engineer, then the design-immunity defense was inapplicable because the design element at issue was not approved prior to the start of construction.

In response to Caltrans's argument that the line-placement decision was protected by design immunity because it was within preapproved standards, Randy's Trucking

5.

argued that there were no applicable preapproved standards. The standards Caltrans relied on governed the distance between a stop line and the edge of the intersecting roadway ahead of it. Here, however, the important distance was the distance between the stop line and the railroad tracks behind it.

Randy's Trucking attacked Caltrans's contention that it had established the reasonableness element of design immunity. It described as a "ridiculous … theory" Caltrans's argument that the placement of the stop line was justified by a need to provide sufficient room for trucks turning left from eastbound Central Valley Highway onto southbound Los Angeles Avenue.

On the question of whether there was a dangerous condition in the first place, Randy's Trucking argued that it was obvious that the placement of the stop line created a "substantial risk of injury" when the intersection was "used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.) The line was 40 feet from the tracks. California law allows trucks up to 65 feet in length. The truck involved in this case was 56 feet long. Declarations by Randy's Trucking's two experts cited five reports of prior accidents at the same crossing since 1974. Randy's Trucking suggested that the small number of accident reports could have been the result of Caltrans's limited record keeping.

Finally, Randy's Trucking invoked what it referred to as the "'[t]rap' [e]xception to [d]esign [i]mmunity." The cases it cited, however, refer not to an exception to the immunity of section 830.6, but to an exception to a defense set forth in section 830.8. This is a defense to a claim of failure to warn. Section 830.8 provides that a public entity is not liable for an injury caused by "the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code." (§ 830.8.) Then it provides that this immunity does not apply if a sign or other device "was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising

6.

due care." (*Ibid*.) In other words, Randy's Trucking argued that a reasonable truck driver would not realize that the end of a large rig would be on the tracks when the rig was stopped at the intersection, and Caltrans negligently failed to place a sign near the crossing warning of this danger.

The trial court issued a written order granting the motion for summary judgment, relying on Caltrans's design-immunity defense. The court found that Caltrans's plans, bearing indications that the intersection was built in accordance with a preapproved design, were sufficient to establish the prior-approval element of the defense. The court made this finding despite Caltrans's admission that the plans did not specify the placement of the stop line at issue in the litigation.

Next, the court found that the reasonableness element of the design-immunity defense was established by the declaration of Caltrans's expert, who stated that the stop-line placement was reasonable. The court sustained Caltrans's objection to the admission of Randy's Trucking's contrary expert declaration on this subject. The court stated that the opinion expressed in the declaration lacked foundation because the expert claimed "no knowledge or opinions with regards to [Caltrans's] approval of construction plans." The court concluded that Caltrans's expert opinion therefore was uncontested and was sufficient to support a reasonableness finding.

The trial court then considered the possibility that Caltrans's design immunity was lost through a change in conditions that caused the property to become dangerous after it was built. It found that no evidence of any change in the physical conditions at the intersection had been produced. It rejected the contention that a change in conditions had been shown by an increase in accidents at the site. After describing reports of five prior accidents, the court concluded that none of the reports contained sufficient detail to show that the accidents happened in the same place as, and under circumstances similar to, the accident at issue in this case. Further, two of the accidents were irrelevant because they took place in 1974 and 1975, before Caltrans designed and built the improvements to the

7.

intersection as it existed at the time of the accident. The court sustained Caltrans's evidentiary objections to the prior-accident evidence.

Finally, the court discussed Randy's Trucking's contention that design immunity did not apply because the intersection was a "trap" for truck drivers. It concluded that "the subject location's physical layout configuration is sufficiently obvious so that drivers of tractor-trailer trucks would be aware that trailers of a certain length may be located on the tracks when the trucks were stopped at the stop limit line." Consequently, a driver exercising due care would be aware of the danger and no sign was necessary to warn of it, so section 830.8 barred liability.

The court's minute order included a summary of its rulings on the parties' evidentiary objections. Regarding the declarations of Randy's Trucking's two experts, Robert Crommelin and Matthew D. King, the court stated:

> "[T]he declaration of the plaintiff/cross-complainants' expert King lacked qualifications and foundation, leaving his opinions inadmissible. The declaration of Crommelin lacked foundation with regard to [Caltrans's] approval processes, and left the argumentative opinions objectionable, and were without sufficient foundation to support a showing of a dangerous condition." (Capitalization omitted.)

The trial court entered judgment for Caltrans on April 28, 2012.

## *DISCUSSION*

### I.    *Standard of review and applicable law*

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We independently review the record and apply the same rules and standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the

8.

applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* at p. 850.) We view the facts in the light most favorable to the nonmoving party and assume that, for purposes of our analysis, his version of all disputed facts is correct. (*Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 159.) A moving defendant can establish its entitlement to summary judgment by either (1) demonstrating that an essential element of the plaintiff's case cannot be established or (2) establishing a complete defense. (Code Civ. Proc., § 437c, subd. (o).)

In a case alleging a dangerous condition of public property, section 830.6 bars a public entity's liability where the following three elements are shown: (1) The injury was caused by a defective plan or design for the construction or improvement of the property. (2) The plan or design was approved in advance by the public entity's legislative body or a body or employee exercising discretionary authority, or the plan or design was prepared in conformity with standards that received such advance approval. (3) The approval or adoption of the design or the standards was reasonable. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 280, pp. 456-457.)

At the time of the adoption of the Government Claims Act, the California Law Revision Commission stated the purposes of the design-immunity defense:

> "'There should be immunity from liability for the plan or design of public construction and improvements where the plan or design has been approved by a governmental agency exercising discretionary authority, unless there is no reasonable basis for such approval. While it is proper to hold public entities liable for injuries caused by arbitrary abuses of discretionary authority in planning improvements, to permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decisionmaking by those public officials in whom the function of making such decisions has been vested.' (4 Cal. Law Revision Com. Rep. (1963) p. 823.)" (*Mikkelsen v. State of California* (1976) 59 Cal.App.3d 621, 630.)

To establish the third element of design immunity, the state only needs to present substantial evidence that the approval of the design or adoption of the standards at issue

was reasonable. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 (*Grenier*).) This means the opinion of the state's expert generally suffices, and the existence of a contrary opinion by a plaintiff's expert does not create a triable issue, since a mere conflict in evidence does not show that evidence is insubstantial. (*Id.* at p. 941.)

The question of whether there is substantial evidence of reasonableness is to be answered in the first instance by the trial court, not the jury. Section 830.6 establishes this point expressly. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 72 (*Cornette*) [§ 830.6 provides that "the trial or appellate court" is to determine whether there is substantial evidence of reasonableness].)

Some courts, including this one, have held that the other two elements of design immunity are also to be decided in the first instance by the trial court and are not for the jury. (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 728; see also *Cornette, supra*, 26 Cal.4th at p. 74, fn. 3 [listing additional cases].) We, however, agree with *Hernandez v. Department of Transportation* (2003) 114 Cal.App.4th 376, 383, 386-388 (*Hernandez*), that in *Cornette*, the Supreme Court at least implicitly rejected this view. The Supreme Court stated that section 830.6 expressly reserves only the question of whether there is substantial evidence of reasonableness for court determination. It also stated that none of its decisions had ever stated or implied that the other two elements were not for the finder of fact, and that Courts of Appeal so holding had done so "'without critical comment or explanation and without reference to the text of'" the statute. (*Cornette, supra*, at p. 74.)

The consequences of these rules for our purposes are as follows: We must uphold the trial court's determination on the third element if Caltrans presented substantial evidence that the decision to adopt the design or standards at issue was reasonable, even if Randy's Trucking presented substantial evidence to the contrary. On the other two elements, by contrast, the existence of conflicting evidence would give rise to triable

10.

questions of fact and summary judgment could not be upheld. (*Hernandez, supra*, 114 Cal.App.4th at pp. 387-388.)

## II.    *Design immunity: first element*

The first element of design immunity is undisputed in this case. The parties agree that the design of the intersection, and in particular the placement of the stop line relative to the railroad tracks, caused the accident.

## III.    *Design immunity: second element*

On the second element—prior approval of the design or standards—we agree with Caltrans's argument that there is no triable issue of material fact because the stop line was placed within the limits provided by preexisting state standards. As the plain language of section 830.6 indicates, an improvement to public property designed in conformity with standards previously approved by an authorized employee or body enjoys design immunity. (See *Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52, 59 [stating "[d]esign immunity extends to plans that are 'in conformity with' the state's approved standards even when those plans have not been specifically approved" and upholding summary judgment based on design immunity where defendant relied on signage installed in conformity with approved standards].)

In her declaration, Caltrans's expert, Kim Nystrom, authenticated copies of the pertinent sections of Caltrans's Traffic Manual, in effect at the time the work was performed at the intersection, and the California Manual on Uniform Traffic Control Devices, in effect at the time of the litigation. The Traffic Manual states: "In the absence of a marked crosswalk, the [stop] limit line should be placed at the desired stopping point; this point is typically no more than 30 feet nor less than 4 feet from the nearest edge of the intersecting roadway." Similarly, the Manual on Uniform Traffic Control Devices states: "In the absence of a marked crosswalk, the stop line … should be placed at the desired stopping … point, but should be placed no more than 9 m (30 ft) nor less than 1.2

11.

m (4 ft) from the nearest edge of the intersecting traveled way." Nystrom declared that she measured this distance in the intersection at issue and found it to be 14 feet.

From the fact that these manuals have been issued, it can reasonably be inferred that they were approved by officials with authority to approve them. Randy's Trucking does not contend otherwise. It presented no evidence bringing into dispute either the approval of the standards or the placement of the stop line in conformity with them.

In this appeal, Randy's Trucking does not renew the contention it made in the trial court that the standards Caltrans relies on are irrelevant because they deal with the distance from the stop line ahead to the intersecting road, whereas the important distance in this case is the distance from the stop line back to the railroad tracks. We would not have been persuaded by this argument if Randy's Trucking had made it. The stop line was placed in conformity with state standards even if the state could have, but did not, make another standard (regarding the distance between stop lines and railroad tracks) that might have conflicted with the line's placement. The question of whether the choice of 14 feet from the intersection instead of a smaller number within the standard (which would have provided more clearance from the railroad tracks) was *unwise* pertains to reasonableness—the third element of design immunity—and will be discussed below.

The trial court found that the second element of design immunity was satisfied based on Caltrans's plans showing that the design was approved and the work was done as approved. Caltrans admits, however, that the design element at issue—the placement of the stop line—was not specified in the approved plans and that a field engineer had to make the decision while construction was underway. Randy's Trucking's arguments in this appeal focus primarily on the question of whether design immunity can be established on the basis of approved plans that did not include a specification of the design element that caused the plaintiff's injury. (See, e.g., *Grenier, supra*, 57 Cal.App.4th at p. 941, fn. 7 ["If the injury-producing element was not a part of the discretionarily approved design, immunity is defeated."].) Because we uphold the judgment based on approved

standards, not approved plans, it is unnecessary for us to address this question. Randy's Trucking also argues that Caltrans's plans do show a position for the stop line and that the actual placement of the line differs from that position; it further argues that the trial court abused its discretion in excluding its expert's opinion that this is what Caltrans's plans show. Again, we need not address these contentions because we uphold the judgment based on construction in conformity with approved standards, not approved plans.

## IV.     *Design immunity:  third element*

We turn to the third element of design immunity, substantial evidence of the reasonableness of that which was approved. We deal here with the question of whether a reasonable public employee or body could have adopted the state's standards for the placement of stop lines.

It has been held that approval of a *plan* "by competent professionals can, in and of itself, constitute substantial evidence of reasonableness." (*Grenier, supra*, 57 Cal.App.4th at p. 941.) We see no reason why the same proposition would not apply to the approval of *standards* by competent authority. As we have said, the fact that the state issued the Caltrans Traffic Manual and the California Manual on Uniform Traffic Control Devices supports a reasonable inference that those manuals and the standards they contain were approved by officials with authority to approve them. Their official issuance is comparable to an expert opinion favoring the conclusion that they are reasonable. Where, as here, no reasons have been presented to doubt that the standards in an official publication were reasonably adopted, we conclude that their promulgation itself is substantial evidence of their reasonableness. Randy's Trucking makes no argument to the contrary.

Although the parties cite no authority on the point, we will assume for the sake of argument that the choice of a specific placement of the stop line within the limits set by the state standards must also be shown to be reasonable by substantial evidence. Nystrom's declaration provides the necessary evidence. Nystrom declared that 65-foot

13.

trucks require a 50-foot turning radius. Given this required radius, trucks turning left from southbound Central Valley Highway onto eastbound Los Angeles Avenue would be unable to clear a vehicle stopped at the stop line at issue in this case if it had been placed further forward. "[I]t is clear," Nystrom declared, that "the stop bar was appropriately located … to avoid conflicts between turning trucks from the southbound leg of the intersection onto eastbound E. Los Angeles." She further opined that, "if the stop bar were moved closer toward the intersection and trucks turning from the southbound leg were unable to complete their left turn in one sweep, it would prohibit and/or delay the free movement of westbound vehicles stopped at the subject intersection." As for the risk of truck-train collisions arising from the chosen placement, Nystrom stated: "Once a westbound driver stops at the limit line he/she may then pull forward to improve their position prior to crossing. If the truck driver moved forward prior to the train's crossing, without entering the intersection, the truck's trailer would have cleared the tracks and not have been hit." It has been held that "[t]he practice of stopping at a limit line and then 'creeping' forward to a point of visibility has long been recognized as 'practical' under California Law. (See *Smith v. Pellissier* (1955) 134 Cal.App.2d 562, 570 ….)" (*Hefner v. County of Sacramento* (1988) 197 Cal.App.3d 1007, 1016, overruled on other grounds by *Cornette, supra*, 26 Cal.4th at p. 74, fn. 3.) A similar notion applies here.

In the trial court, Randy's Trucking argued that the unreasonableness of the stop line placement was obvious and that Nystrom's opinion was so clearly flawed that the court should reject it. Randy's Trucking's experts Crommelin and King both opined that the placement of the stop line was unreasonable. In effect, Randy's Trucking's position was that the danger presented by the line placement was so clear, and its claimed benefit so insignificant, that reasonable minds could not differ on the subject, despite Nystrom's opinion. Randy's Trucking does not renew this contention in its appellate briefs. In our view, we are merely presented with conflicting evidence over the reasonableness of the line-placement decision. Since our task is only to determine whether the evidence

14.

supporting the defense is substantial, it does not matter which side we consider to have the stronger position. We conclude that the evidence supporting the defense is substantial.

## V.    *Prior accidents*

In its appellate briefs, Randy's Trucking discusses the reports of prior accidents at the intersection. It says these accidents placed Caltrans on notice that the design of the intersection was dangerous and the trial court abused its discretion in excluding evidence of them.

This discussion of prior accidents could be relevant to two legal issues. First, it could be relevant to the issue of whether there was a dangerous condition of public property in the first place. It is unnecessary to address that issue, however; the determination that the design-immunity defense has been established presupposes that, even if there was a colorable claim of a dangerous condition of public property, the public entity defendant is shielded from liability.

Second, the prior accidents could be relevant to a claim that Caltrans lost its design immunity because of a physical change in conditions on the property. Section 830.6 provides that a public entity can lose its design immunity if property changes and ceases to be in conformity with an approved plan or standard. A plaintiff claiming that design immunity has been lost must show that: (1) a change in physical conditions has made the property dangerous; (2) the public entity had actual or constructive notice of the change; and (3) the public entity had reasonable time to obtain funds to bring the property back into conformity or, failing that, had not made a reasonable attempt to provide a warning. (*Cornette, supra*, 26 Cal.4th at p. 72.) Again, it is unnecessary to discuss the accident reports or their exclusion from evidence in the context of this issue. In its papers responding to the motion for summary judgment, Randy's Trucking conceded that it is undisputed that there has been no change in physical conditions at the intersection since Caltrans performed its work there in 1990. Accidents or an increase in accidents cannot

15.

provide notice of a change in physical conditions if no change in physical conditions has taken place.

## VI.     *Trap and failure to warn*

Finally, Randy's Trucking argues that the trial court erred when it rejected the claim that the intersection is a "trap" for tractor-trailer drivers because there is no sign warning them about the distance between the railroad tracks and the stop line.  Randy's Trucking says that, "[w]ithout citation to any evidence … the trial court substituted its own perceptions to conclude that the physical layout was sufficiently obvious that truck drivers would be aware that certain trailer lengths might not clear the tracks .…"

We need not decide whether the trial court's reasoning was correct.  Caltrans relies on a different approach.  It contends that, because Randy's Trucking failed to plead a cause of action for failure to warn in its complaint, it cannot rely on the trap doctrine as a reason to deny summary judgment.  Randy's Trucking does not attempt to rebut this argument in its reply brief.  We conclude that the argument is correct.

Design immunity is a defense to a claim of a dangerous condition of public property.  Presumably, if the trap doctrine were an exception to this defense, a plaintiff would not be required to plead it specifically in a complaint alleging a dangerous condition of public property, since plaintiffs generally are not required to anticipate defenses in their pleadings.  (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 158-159.)  Contrary to the description in Randy's Trucking's papers opposing the motion for summary judgment, however, the trap doctrine is not an exception to the design-immunity defense set forth in section 830.6.  Instead, it is an exception to the immunity for failure to post warning signs set forth in section 830.8, which is a defense to a claim of a failure to warn.  Randy's Trucking did not plead a failure to warn.  In other words, Randy's Trucking is relying on an exception to a defense to a cause of action it did not assert in its complaint.

A motion for summary judgment can be resisted only on the basis of claims pleaded in the complaint.  "'The pleadings delimit the issues to be considered on a motion

16.

for summary judgment. [Citation.]' (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 891 ….) Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98-99, fn. 4 ….)" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.) Consequently, Randy's Trucking would have had to plead a failure to warn before it could invoke the trap exception in opposing the motion for summary judgment. Caltrans's motion for summary judgment could not properly have been denied on the ground that it failed to overcome a cause of action that Randy's Trucking did not plead.

This conclusion does not mean Randy's Trucking can revive the lawsuit by now seeking leave to amend its complaint to allege a cause of action for failure to warn. "If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings *before* the hearing on the summary judgment motion." (*Destefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264-1265, italics added.) There is no right to seek leave to amend for the first time on or after appeal. (*Id*. at p. 1265.)

## VII. *Evidentiary rulings*

Randy's Trucking maintains that the trial court abused its discretion when it sustained Caltrans's objections to its expert opinions and the evidence of prior accidents. We have held, however, that the opinion of Caltrans's expert is substantial evidence of the reasonableness of the stop line's placement with or without the admission of the contrary expert opinions. We have also held that summary judgment is appropriate regardless of prior accidents because Caltrans has established design immunity, and Randy's Trucking has not shown a triable issue regarding the loss of design immunity. Therefore, the issue of the evidentiary rulings is moot and we need not consider it further.

## *DISPOSITION*

The judgment is affirmed.  Respondent is awarded costs on appeal.

_____

Hoff, J.*

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Detjen, J.

---

*Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.