Filed 1/6/16  Kachlon v. Spielfogel CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MORDECHAI KACHLON et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DANIEL J. SPIELFOGEL, <br><br> Defendant and Respondent. | B259872 <br> (Los Angeles County <br> Super. Ct. No. BC339973) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Law Offices of Stewart Levin, Stewart J. Levin, Roee Kaufman for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer, David B. Owen for Defendant and Respondent.

_____

Beginning in 2002, three attorneys in succession handled legal matters for plaintiffs that in 2005 resulted in a substantial judgment against them. Plaintiffs filed this legal malpractice action against the attorneys in September 2005. The first attorney, whose representation of plaintiffs had ended in 2003, moved for summary judgment, arguing the action was time-barred as to him. The trial court granted the motion, concluding it was undisputed plaintiffs were injured, and their cause of action therefore accrued, outside the applicable one-year limitations period. We reversed, concluding no evidence indicated plaintiffs sustained an injury more than one year before filing suit. We held that although a compensable injury could include attorney fees incurred to rectify a prior attorney's mistakes, no evidence—for example fee invoices or deposition testimony—showed when plaintiffs first became indebted to any successor attorney. (*Kachlon v. Spielfogel*, Dec. 31, 2012, B238406 [nonpub. opn.] (*Kachlon I*).)

After remand, the first attorney again moved for summary judgment, this time presenting a fee invoice from the second attorney that indicated plaintiffs incurred fees beginning in October 2003. The trial court granted the motion, finding the invoice indicated plaintiffs were injured in 2003, more than one year before they filed suit in 2005, and their causes of action were therefore time-barred.

We affirm. The successor attorney's fee invoice shows plaintiffs became indebted to him by December 31, 2003 at the latest, more than one year before they filed the instant lawsuit. Their causes of action therefore accrued on that date, and they waited too long to pursue them.

**BACKGROUND**

We glean the facts from plaintiffs' complaint and evidence submitted in connection with defendant's summary judgment motion, strictly construing the moving parties' papers and liberally construing those of the opposing party. (*Howell v. State Farm Fire & Casualty Co*. (1990) 218 Cal.App.3d 1446, 1448.) We will also rely on some background facts recited in our opinion in *Kachlon I*, as the parties rely exclusively on that opinion for those facts.

2

Plaintiffs Mordechai and Monica Kachlon were owed $53,000 by Debra and Donny Markowitz, the debt represented by a promissory note and secured by a deed of trust. The Markowitzes also owed Mordechai for contractor services he had performed at their home and for a personal loan he had made.[1] These latter debts were unsecured.

In July 2002, Mordechai signed a writing acknowledging that the promissory note had been canceled and the deed of trust reconveyed in exchange for $12,000.

In November 2002, plaintiffs retained defendant Daniel Spielfogel, an attorney, to represent them with respect to both the secured and unsecured debts. On March 12, 2003, Spielfogel filed a complaint on behalf of Mordechai against the Markowitzes, seeking recovery for Mordechai's construction services and the unsecured personal loan. (*Kachlon v. Markowitz* (Super. Ct. Los Angeles County, 2003, No. BC291979); the Kachlon action.) The complaint did not mention the secured debt.

Concerning the secured debt, Mordechai advised Spielfogel that he had canceled the $53,000 promissory note and reconveyed the security to the Markowitzes in exchange for $12,000, but felt they still owed the remaining balance on the note—$41,000— pursuant to an oral agreement. Mordechai also informed Spielfogel that Debra was a lawyer and that the Markowitzes would contest this claim. Spielfogel drafted a second complaint concerning the secured debt, but it was never filed.

Instead, Spielfogel pursued extensive nonjudicial foreclosure on the deed of trust that had secured the $53,000 debt. This effort ultimately failed when the trustee discovered the debt had been satisfied.

In August 2003, the Markowitzes sued plaintiffs for damages arising from the foreclosure proceedings, alleging plaintiffs recorded notices of default after acknowledging that the underlying debt had been paid and the promissory note and deed of trust delivered to escrow for cancellation. (*Markowitz v. Kachlon* (Super. Ct. Los Angeles County, 2003, No. BC310492); the Markowitz action.) They alleged that

---

[1] For clarity, we will sometimes refer to principals by their first names.

plaintiffs falsely represented the amount due on the note, and falsely claimed the Markowitzes had defaulted, in an effort to obtain the Markowitzes' property by fraud. As a result, title to the property was clouded and its value diminished, and the Markowitzes were forced to incur attorney fees to clear the title. The Markowitzes sought general damages, punitive damages, injunctive relief and attorney fees.

The Markowitz and Kachlon actions were consolidated on October 10, 2003.[2]

In October 2003, plaintiffs terminated their relationship with Spielfogel and retained a second attorney, Salvador LaVina. They also retained a third attorney, Robert Gilchrest, to litigate the consolidated lawsuits.

In June 2005, plaintiffs suffered an adverse judgment in the amount of approximately $500,000 in damages and attorney fees.

Plaintiffs filed the instant malpractice lawsuit against their three prior attorneys on September 16, 2005. As to Spielfogel, plaintiffs alleged he failed to advise them it would be "extremely ill advised" to foreclose on the subject note and trust deed, as doing so would expose them to "liability for slander of title, legal fees of the defendants and other parties, and causes of action by Markowitz against Kachlon for fraudulent and wrongful foreclosure" and punitive damages. Spielfogel "should have strongly and specifically advised Kachlon not to pursue . . . the Trust Deed and Note foreclosure against Marko[w]itz because plaintiffs would be liable for punitive damages and attorneys fees, and other damages, if they lost the case, which was a very likely result. Particularly because Debra Markowitz, herself, was an attorney, and Kachlon was wrong to file for foreclosure of a Note already paid by Markowitz, getting sued for wrongful foreclosure was an extremely foreseeable and adverse event, and Kachlon should have been advised against it." But Spielfogel advised plaintiffs to pursue foreclosure aggressively, and otherwise "actively participated in the pursuit of this ill conceived claim." As a result,

---

[2] On our own motion we take judicial notice of the trial court's docket, available at http://www.lacourt.org/casesummary/ui/casesummary.aspx?#EVT, last accessed on December 3, 2015.

4

plaintiffs pursued nonjudicial foreclosure against the Markowitzes, which ultimately resulted in their liability for substantial damages.  Plaintiffs' pursuit of nonjudicial foreclosure also compromised and "polluted" the Kachlon action, causing it to fail.

Spielfogel moved for summary judgment, arguing the complaint was time-barred because the Markowitz complaint put them on notice of facts giving rise to their legal malpractice claim more than one year before they filed the malpractice lawsuit.  They also suffered actual injury more than one year before filing suit—when they retained LaVina.  In support of the motion, Spielfogel cited paragraph 20 of plaintiffs' complaint, where they alleged LaVina took over the Kachlon action in 2003.  Spielfogel inferred from paragraph 20 that plaintiffs also incurred attorney fees in 2003.

The trial court agreed, and entered an order granting Spielfogel's motion for summary judgment on the ground that no triable issue existed as to whether the action was time-barred because the Markowitz complaint notified plaintiffs of Spielfogel's alleged negligence more than one year before they filed their malpractice suit, and they suffered injury when they retained LaVina.

We reversed, concluding that merely retaining an attorney did not constitute an injury absent some showing that fees were incurred.  We stated, "Spielfogel presented no evidence, for example fee invoices or deposition testimony, indicating the date plaintiffs first became indebted to LaVina for attorney fees." (*Kachlon I*, at p. *13.)

After remand, Spielfogel obtained a copy of plaintiffs' invoice from LaVina and a declaration from LaVina himself, and then moved again for summary judgment on the ground that the invoice and declaration proved plaintiffs became indebted to LaVina beginning in October 2003.  LaVina declared he agreed on October 2, 2003 to represent plaintiffs in the Kachlon action, and that the invoice "sets forth all tasks performed by [him] on behalf of, and fees incurred to [him] by, the Kachlons from October 2, 2003 through December 31, 2003."  The invoice itself contains several line items that describe services performed, hours worked, and fees incurred.  For example, in October, November and December of 2003, LaVina worked on a "demurrer," an "answer," a

5

"motion to dismiss," and an opposition to a "preliminary injunction," incurring fees that ultimately totaled approximately $28,000 by December 23, 2003.  Plaintiffs paid $5,000 on October 3, 2003, and $2,500 on November 4.

The trial court granted summary judgment on the ground that plaintiffs sustained an actual injury in 2003 yet waited more than a year, until 2005, to file their lawsuit.  The suit was therefore time-barred.

Plaintiffs appealed from the resulting judgment.

## DISCUSSION

### 1.    Standard of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)[3]  Once the moving defendant has met its burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action.  (§ 437c, subd. (c).)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co*., *supra*, 25 Cal.4th at p. 845.)

We review the trial court's ruling on a motion for summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.)  "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party" (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037), accepting as true the facts shown by the evidence offered in opposition to summary judgment and the reasonable inferences that can be drawn from them (*Spitzer v. Good Guys, Inc*. (2000) 80 Cal.App.4th 1376, 1385).  If the material facts are in conflict,

---

[3] All undesignated statutory references are to the Code of Civil Procedure.

the factual issues must be resolved by trial. (*Hernandez v. Dept. of Transportation* (2003) 114 Cal.App.4th 376, 382.)

### 2. Plaintiffs' Legal Malpractice Action is Time-Barred

The limitations period for legal malpractice is set forth in section 340.6, which states, in relevant part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [T]he period shall be tolled during the time that . . . [¶] (1) The plaintiff has not sustained actual injury." (§ 340.6, subd. (a)(1).)

"The test for actual injury under section 340.6 . . . is whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services. . . . [D]etermining when actual injury occurred is predominantly a factual inquiry. [Citations.] When the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751.) Attorney fees incurred to defend against a third party lawsuit are compensable damages in a malpractice action predicated on attorney negligence giving rise to the lawsuit. (*Id.* at p. 759.)

Plaintiffs discovered Spielfogel's alleged wrongful act or omission in 2003, when they received the Markowitz complaint detailing exactly how and why their attorney's actions had been wrongful. The limitations period began then, but was tolled so long as they sustained no actual injury.

Spielfogel presented evidence that plaintiffs suffered actual injury in 2003, when they incurred attorney fees and costs to defend against the Markowitz action. LaVina declared he represented plaintiffs beginning in October 2003, and his invoice indicates

7

they incurred attorney fees in the amount of approximately $28,000 by December 23, 2003. The one-year limitations period began running at that time but plaintiffs waited more than a year to sue Spielfogel. Their action was therefore time-barred.

Plaintiffs argue the Markowitz complaint gave them no notice of Spielfogel's negligence because they did not and could not read or understand it, having limited English skills. The argument is without merit. An action against an attorney for legal malpractice must be commenced "within one year after the plaintiff discovers, *or through the use of reasonable diligence should have discovered*, the facts constituting the wrongful act or omission." (§ 340.6, subd. (a), italics added; see *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807-808 [inquiry notice starts the limitations period running].) A reasonably diligent non-English speaker who receives a complaint and retains an attorney to defend against it will ask the attorney what the complaint alleges.

Plaintiffs argue no evidence suggests they incurred attorney fees in October 2003 because LaVina's declaration indicates they incurred fees only in the Kachlon action, not the Markowitz action. The argument is without merit. Although LaVina declared plaintiffs originally retained him to prosecute the Kachlon action, he also stated his invoice set forth "all tasks" he performed for them. The invoice contains several line items that describe services performed, hours worked, and fees incurred with respect to the Markowitz action, including work on a demurrer, an answer, and an opposition to a preliminary injunction. Only the Markowitzes, not the Kachlons, sought injunctive relief, and in their opposition to Spielfogel's summary judgment motion plaintiffs admitted the Markowitzes sought a preliminary injunction as well.

In sum, no triable issues exist as to whether plaintiffs suffered actual injury more than one year before filing their malpractice lawsuit and whether they were put on inquiry notice that Spielfogel's conduct caused that injury. Therefore, summary judgment was proper.

8

**DISPOSITION**

The judgment is affirmed.  Respondent is to recover his costs on appeal.

NOT TO BE PUBLISHED.


                                                    CHANEY, J.


We concur:



        ROTHSCHILD, P. J.



        JOHNSON, J.